[No. B166729. Second Dist., Div. Six. June 1, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
GUADALUPE LOPEZ, Defendant and Appellant.

COUNSEL

Lyn A. Woodward, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Margaret E. Maxwell and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—Guadalupe Lopez was convicted by jury of unlawful possession of a firearm (Pen. Code, § 12021, subd. (e); count 1),[1] unlawful possession of ammunition (§ 12316, subd. (b)(1); count 2), and resisting, obstructing or delaying a peace officer (§ 148, subd. (a)(1); count 3). The trial court found that he had suffered a prior serious felony conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and sentenced him to six years state prison.

Lopez appeals, contending that the trial court erred in denying his motion to suppress evidence and in not staying the sentence on count 2 for possession of ammunition pursuant to section 654. We impose a stay of sentence on count 2 and affirm the judgment as modified.

### Facts

At approximately 7:00 p.m. on August 11, 2002, Hilda Pizarro told her daughter to call the police after two Hispanic men approached her in a threatening manner. One of the men had a handgun and a can of spray paint in a backpack. The other man spoke on a cell phone and said: "I'm here" and "I'll meet you." Before the police arrived, the men painted graffiti on a wall.

Several police officers responded to the call. Officer Landavazo spoke to Pizarro who pointed to three Hispanic men near a beach jetty. Concerned about the safety of children and families in the park, Officer Jeff Brooks approached the three men. Appellant split off from the group and walked towards the officer.

Officer Brooks identified himself and asked appellant's name. Appellant said: "Fuck you. I don't have to tell you my name." Officer Brooks stated that he was investigating a "male with a gun" call and had to "pat him down, check for a gun." Appellant replied: "Fuck that. I'm not going to tell you my name. You're fucking not going to pat me down."

---

[1] All statutory references are to the Penal Code. Section 12021, subdivision (e) makes it a felony for any person to possess a firearm if the person has previously suffered a specified felony adjudication in the juvenile court.

Appellant was combative and reached towards the front of his pants several times. Appellant wore baggy pants and had a large heavy object in the front pocket. Officer Brooks ordered appellant to sit down and keep his hands visible. Each time an officer tried to pat him down for weapons, appellant rolled on his side to kick the officer and slid away.

Officer Michael Foster requested that appellant submit to a patdown. Appellant again refused and was placed under arrest for violating section 148. He was twice advised that he would be shot with a nonlethal beanbag if he did not submit to a patdown. When appellant said "fuck that," he was shot in the chest with a beanbag.

Appellant still refused to comply with the officers' requests. A second beanbag was fired, momentarily disabling him. Two officers handcuffed appellant, patted him down, and put him in a patrol car. They did not then find a gun.

Officer Brooks searched the jetty area and found a loaded .32-caliber handgun wrapped in a bandanna. Because appellant was wearing loose, baggy pants and was attempting to reach into his pocket, the officers believed that he was still armed. Officer Dirk Boon conducted a second patdown and found a loaded Makarov nine-millimeter handgun in appellant's right front pocket. The safety was off, a bullet was chambered, and seven more bullets were in the magazine.

## Suppression Motion

Appellant contends that the officers lacked reasonable suspicion to detain him and perform a patdown search. The trial court found that "since the gun could easily be transferred from one individual to another, relatively easily, it seems to me the officers had . . . cause to stop and detain the individuals . . . and do what they did."

On review, we defer to the trial court's express and implied findings which are supported by substantial evidence and determine whether, on the facts so found, the detention was reasonable. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982].) An officer, in the course of the criminal investigation, may pat down the suspect's outer clothing where

the officer has reason to believe the suspect may be armed and dangerous. (*Terry v. Ohio* (1968) 392 U.S. 1, 30 [20 L.Ed.2d 889, 911, 88 S.Ct. 1868].)

Based on the 911 call, Pizarro's identification of the men, and the graffiti on the sidewalk, Officer Brooks had a reasonable suspicion to make an investigatory stop and conduct a protective patdown for weapons. Appellant was belligerent, refused to give his name, refused to keep his hands visible, and refused to submit to a patdown. After he was ordered to sit down, "[h]e popped back up. And it was the same 'fuck that,' you're not touching me, you're not patting me down . . . ." Appellant was lawfully arrested for violating section 148 and searched incident to a lawful arrest. (*New York v. Belton* (1981) 453 U.S. 454, 462–463 [69 L.Ed.2d 768, 776, 101 S.Ct. 2860].)

Appellant's reliance on *Brown v. Texas* (1979) 443 U.S. 47 [61 L.Ed.2d 357, 99 S.Ct. 2637] is misplaced. There the defendant was stopped and arrested for simply refusing to identify himself. The United States Supreme Court held: "The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct." (*Id.*, at p. 52 [61 L.Ed.2d at p. 362–363].) The court ruled that the detention "violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct." (*Id.*, at p. 53 [61 L.Ed.2d at p. 363].)

The instant case is a far cry from a simple refusal to identify one's self. Appellant's refusal to identify himself was coupled with conduct that can only be described as belligerent. This interfered with the officers' duty to perform a patdown search.

Appellant's reliance on *Graves v. City of Coeur D'Alene* (9th Cir. 2003) 339 F.3d 828, a civil rights action for false arrest, is also misplaced. There, an officer arrested a protester at an Aryan Nations parade who refused to identify himself or let the officer search his backpack. The officer had been told there might be violence or explosives at the parade and asked to search the backpack which was heavy and had cylindrical objects. The federal court held that plaintiff's refusal to identify himself did not establish probable cause to arrest. (*Id.*, at pp. 840–841.) Although the officer had an articulable reasonable suspicion to make an investigatory stop, the officer "did not develop any further facts that would increase a reasonable officer's suspicion . . . ." (*Id.*, at p. 843.)

The court in *Graves* focused on probable cause to arrest. Reasonable suspicion to make an investigatory stop and conduct a protective patdown for weapons is a less demanding standard. (*United States v. Sokolow* (1989) 490

U.S. 1, 7 [104 L.Ed.2d 1, 10, 109 S.Ct. 1581]; *People v. Bennett* (1998) 17 Cal.4th 373, 387 [70 Cal.Rptr.2d 850, 949 P.2d 947].) The Fourth Amendment analysis in *Graves* would have been different had the plaintiff reached into the backpack or his pockets, or was suspected of carrying a firearm. " '[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon.' [Citation.]" (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373 [124 L.Ed.2d 334, 344, 113 S.Ct. 2130].)

Here the police responded to a call that two men in a crowded park had a firearm. Hilda Pizarro identified herself as the caller, pointed to the men, and said that two of them had bothered her and painted graffiti. Because it was dark, she could not say whether appellant was the man with the weapon. When Officer Brooks walked towards the jetty, the men huddled and then split up. He did not know which man had the pistol. Appellant approached the officer wearing loose, baggy pants, was hostile and aggressive, refused to give his name, and refused to keep his hands away from his pocket.

Based on the totality of the circumstances, we conclude that the detention and patdown were reasonable and did not violate the Fourth Amendment. (*Terry v. Ohio, supra,* 192 U.S. at p. 27 [20 L.Ed.2d at p. 909]; *People v. Avila* (1997) 58 Cal.App.4th 1069, 1074 [68 Cal.Rptr.2d 432].) "Indeed, the officers here would have been derelict in their duty if they had not acted quickly to ascertain if defendant was indeed armed with a firearm, under the circumstances presented. We see no other reasonable course of action they could have taken to make that determination, without risking injury to themselves or those in the [park] . . . ." (*People v. Coulombe* (2000) 86 Cal.App.4th 52, 59–60 [102 Cal.Rptr.2d 798].)

Section 654

Appellant was sentenced as a second strike offender to six years in state prison for unlawful possession of a firearm. A concurrent six-year term for unlawful possession of ammunition, and a one-year concurrent term for resisting, obstructing or delaying a peace officer were also imposed. Citing section 654, appellant argues that the sentence for unlawful possession of ammunition should be stayed because possession of the firearm and the ammunition was an "indivisible course of conduct." (See *People v. Miller* (1977) 18 Cal.3d 873, 887 [135 Cal.Rptr. 654, 558 P.2d 552] [where applicable, section 654 precludes imposition of concurrent sentence]; see also *People v. Britt* (2004) 32 Cal.4th 944, 951–954 [12 Cal.Rptr.3d 66, 87 P.3d 812].) This is an issue of first impression in California.

The Attorney General asserts that the sentencing error was waived. The waiver doctrine, however, does not apply to section 654 sentencing issues. " 'Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569].)

The Attorney General conclusionally argues that appellant had separate intents and objectives in unlawfully possessing the firearm and ammunition. Other than find that it was "a highly aggravated 12021 from start to finish," the trial court did not identify multiple criminal objectives. Neither does the Attorney General.

While possession of an unloaded firearm alone can aid a person committing another crime, possession of ammunition alone will not. The former may be used as a club and a victim may be fearful that the firearm is loaded. While the latter may be thrown at a victim, it is extremely unlikely that possession of bullets alone would scare anyone but the most timid. In combination, however, the mixture is lethal and that is why criminals have a penchant for loaded firearms.

The Legislature has wisely declared that specified people should not possess firearms and/or ammunition. The obvious legislative intent is to prohibit these persons from combining firearms with ammunition. Appellant's obvious intent was to possess a loaded firearm.

█  In resolving section 654 issues, our California Supreme Court has recently stated that the appellate courts should not "parse[] the objectives too finely." (*People v. Britt, supra,* 32 Cal.4th at p. 953.) To allow multiple punishment for possessing ammunition in a firearm would, in our judgment, parse the objectives too finely. While there may be instances when multiple punishment is lawful for possession of a firearm and ammunition, the instant case is not one of them. Where, as here, all of the ammunition is loaded into the firearm, an "indivisible course of conduct" is present and section 654 precludes multiple punishment.

The six-year concurrent sentence for count 2, unlawful possession of ammunition, is stayed pending finality of the judgment and service of sentence on count 1, such stay to become permanent upon completion of sentence as to count 1. The superior court is ordered to prepare an amended abstract of judgment to so show this modification and send it to the Department of Corrections. As so modified, the judgment is affirmed.

Gilbert, P. J., and Coffee, J., concurred.

A petition for a rehearing was denied June 23, 2004, and appellant's petition for review by the Supreme Court was denied September 1, 2004.