Filed 11/26/13  P. v. Derritt CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057057 |
| v. | (Super.Ct.No. FWV1001109) |
| DEANDRE LAMONT DERRITT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Donald G. Umhofer (retired judge of the San Luis Obispo Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), and Mary E. Fuller, Judges.  Affirmed as modified.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise Jacobson and Vincent P. LaPietra, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Deandre Lamont Derritt guilty of (1) being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1));[1] and (2) possessing ammunition while being prohibited from possessing a firearm (§ 12316, subd. (b)(1)). The jury found true the allegation that the two offenses were committed while defendant was free from custody in a pending case. (§ 12022.1.) The jury also found true the allegations that defendant suffered six prior strike convictions (§ 1170.12, subds. (a)-(d)), and four prior convictions for which he served prison terms (§ 667.5, subd. (b)). The trial court struck five of the six strike convictions. The trial court sentenced defendant to prison for a term of 13 years, 4 months.

Defendant raises four issues on appeal. First, defendant requests this court independently review the *Pitchess*[2] motion transcripts to determine if the trial court erred when it denied defendant's motion. Second, defendant contends the trial court erred by not applying section 654 to the sentence related to possessing ammunition. The People concede defendant's section 654 contention is correct. Third, defendant asserts the trial court erred by denying his request for the court to appoint advisory counsel. Fourth, defendant contends his trial attorney was ineffective because he (a) coerced defendant into waiving his constitutional right to testify, and (b) failed to introduce documentary evidence related to a storage facility. We modify defendant's sentence, but otherwise affirm the judgment.

_____

[1] All subsequent statutory references will be to the Penal Code, unless indicated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

## FACTUAL AND PROCEDURAL HISTORY

On May 3, 2010, City of Ontario Police Officer Kopperud was on patrol with her partner Corporal Martinez. The officers were in a motel parking lot, outside room 106, when a vehicle arrived in the lot and parked directly across from room 106. Defendant was sitting in the front passenger seat of the vehicle. There were two people in the car. Defendant's seat was "completely reclined."

The police officers approached the vehicle. Defendant and the driver, James Vaughn (Vaughn), tried to quickly exit the car. One of the officers ordered defendant and Vaughn back into the car; they complied. Defendant leaned forward in the reclined seat and appeared "to be doing something on the floor between his legs." Officer Kopperud ordered defendant to place his hands on the dashboard. Defendant followed the order, but several seconds later put his hands back on the floor. The officer ordered defendant to step out of the car.

After defendant and Vaughn exited the car, the car was searched. Corporal Martinez found a folder containing documents belonging to defendant in the front passenger floorboard area, near the center console. Underneath the front passenger seat, Corporal Martinez found a gun inside a pink sock. The gun was a .32-caliber revolver. The gun was loaded with five unspent bullets. A police firearms expert fired the gun at a firing range. The expert was able to successfully shoot one of the bullets from the gun.

The gun's serial number was visible. Corporal Martinez contacted the registered owner of the gun, Veronica Hicks Gladney (Gladney), who was defendant's mother.

3

Gladney told the Corporal she had been storing the gun in the trunk of her car. Gladney said she had not given defendant permission to take the gun off her property; however, she had asked defendant to clean the trunk of her car and instructed him to clean the gun if he found it because it had become rusty due to moisture in the trunk. The gun was "very rusted" when found by the Corporal.

At trial, Gladney gave the following testimony about the gun and ammunition: Gladney kept the gun loaded "[m]ost of the time." Gladney recognized the pink sock as belonging to her; she last saw the sock two or three years prior, in the trunk of her car. Gladney stated she never gave the gun or bullets to defendant. Gladney denied asking defendant to clean the trunk of her car. Gladney also denied telling Corporal Martinez she asked defendant to clean the trunk of her car.

Gladney testified she last saw the gun at a self-storage facility. Gladney, defendant, and Vaughn were moving Gladney's belongings from one storage unit to a larger storage unit within the same facility. Gladney noticed during the move that the gun was missing. Gladney asked if anyone had seen the gun. After a few hours, while the move was still taking place, Vaughn said he found the gun and held it up. Gladney asked Vaughn to "'[h]ang onto it,'" because "[t]here was a lot of things on the floor all over the place.'" Vaughn did not return the gun to Gladney that day. The last time Gladney saw the gun, Vaughn was holding it. The parties stipulated that on May 3, 2010, defendant was "a convicted felon."

## DISCUSSION

### A.   *PITCHESS* MOTION

#### 1.   *PROCEDURAL HISTORY*

Prior to trial, when defendant was self-represented, he filed a *Pitchess* motion. Defendant requested information reflecting Corporal Martinez or Officer Kopperud "has/have a documented history of misconduct such as discriminatory law enforcement, excessive use[ o]f force, racial and/or ethnic bias[], fabricating police reports, or intentionally misstating facts in their police reports or any of the other abuses specifically listed in paragraph (1) of the motion for pre-trial discovery ([P]*itches*[*s*]) filed herewith[.]" Defendant faulted the officers for omitting from the police reports the fact that the officers' guns were drawn when they ordered defendant and Vaughn to return to the car. Defendant included Sergeant Glisson in the motion as well, because the Sergeant was assigned to photograph evidence at the scene.

The trial court held an in camera hearing on the *Pitchess* motion, but limited it to issues of dishonesty, since excessive force was not an allegation in the case. Defendant was excluded from the in camera hearing. In open court, the trial court said to defendant, "I have reviewed the files of the officers, Romero Martinez, Natalie Kopperud and Timothy Glisson, for any *Brady* material or indication of complaints involving dishonesty. There is no discovery to provide to you."

#### 2.   *DISCUSSION*

Defendant requests this court independently review the records associated with the *Pitchess* motion to determine if the trial court erred when it denied defendant's

5

motion. The People do not object to defendant's request. We have independently reviewed the records and conclude the trial court did not abuse its discretion by ordering the records not be disclosed. (See generally *People v. Chatman* (2006) 38 Cal.4th 344, 398 [similar conclusion on a *Pitchess* issue].)

### B.    SECTION 654

Defendant contends the trial court erred by not staying his sentence for the ammunition conviction pursuant to section 654. The People concede defendant's assertion is correct.

"Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.) In *People v. Lopez* (2004) 119 Cal.App.4th 132, 137-138, the appellate court considered whether a sentence for unlawfully possessing ammunition should be stayed when the defendant was also sentenced for unlawfully possessing a firearm because the facts involved a loaded gun. The appellate court concluded the ammunition sentence should be stayed because when the ammunition is loaded into the firearm, there is an "'indivisible course of conduct.'" (*Id.* at p. 138.)

Since all of the ammunition found in defendant's possession was loaded in the firearm, we agree with defendant and the People that there is an indivisible course of

6

conduct. As a result, we conclude defendant's sentence for possessing ammunition (§ 12316, subd. (b)(1)) must be stayed pursuant to section 654.[3]

The trial court imposed a consecutive term of one year, four months for the ammunition conviction. Typically, when a sentence is reduced by such a significant amount we would remand the matter back to the trial court for resentencing, in order to protect the People's interest in having the appropriate sentence pronounced. (*People v. Burns* (1984) 158 Cal.App.3d 1178, 1183.) However, in this case, the trial court has already imposed the upper prison terms for the firearm conviction and associated bail enhancement, so it appears the maximum sentence has been imposed. Therefore, we will modify defendant's sentence in our disposition.

C.     ADVISORY COUNSEL

1.     *PROCEDURAL HISTORY*

The original felony complaint against defendant was filed on May 6, 2010. On June 3, 2010, the trial court denied defendant's *Marsden*[4] motion concerning his attorney James Brown. Mr. Brown then informed the trial court that his relationship with defendant was "irreparably severed," so the court relieved Mr. Brown. On September 10, 2010, defendant brought a *Marsden* motion against his attorney, Dan Faulhaber. Mr. Faulhaber informed the trial court he had a conflict with representing defendant. The trial court relieved Mr. Faulhaber.

---

[3] The bail enhancement (§ 12022.1) associated with the ammunition conviction was stayed by the trial court.

[4] *People v. Marsden* (1970) 2 Cal.3d 118.

On September 20, 2010, defendant executed a *Faretta*[5] waiver—waiving his right to counsel. The trial court granted defendant self-represented status. Defendant filed a *Pitchess* motion, a motion to prepare an adequate defense (access to a law library), a motion to suppress evidence, and a motion to disqualify the trial judge. Defendant moved ex parte for the trial court to appoint advisory counsel. The trial court "considered the simplicity of the charges mere possession and the defendant[']s legal abilities. The Court [found] that advisory [c]ounsel is unnecessary to defendant's preparation and presentation of his defense."

On January 25, 2011, defendant moved the trial court to appoint counsel, specifically, Richard Barnwell. It appears the motion was denied or never heard, because defendant continued in self-represented status through February. On February 28, 2011, Huong Ho of Fakhimi & Associates requested to be appointed if defendant surrendered his self-represented status. The April 4 minute order reflects defendant "retained" Mr. Ho as his attorney. On June 29, the trial court denied defendant's *Marsden* motion against Houman Fakhimi.

The prosecutor filed an information against defendant on August 10, 2011. Defendant executed a second *Faretta* waiver on August 23. The trial court again granted defendant self-represented status and relieved Mr. Fakhimi. On October 18, the trial court revoked defendant's self-represented status, and appointed the conflict panel to represent defendant. Defendant requested the court reinstate his self-represented

---

[5] *Faretta v. California* (1975) 422 U.S. 806.

status, because the trial court had mistakenly revoked it when the court misinterpreted one of defendant's motions. The trial court granted defendant's request and relieved the conflict panel.

On April 27, 2012, defendant withdrew his motion for appointment of counsel. On May 11, defendant moved the trial court to appoint Eric D. Davis as his attorney. On May 18, the trial court appointed Mr. Davis and terminated defendant's self-represented status. Trial commenced on June 6. The jury delivered its verdicts on June 15. Immediately after the verdicts were rendered, defendant requested self-represented status. The trial court granted the request and relieved Mr. Davis. On August 3, defendant retained attorney Victor Marshall. The trial court revoked defendant's self-represented status.

### 2.    *DISCUSSION*

Defendant contends the trial court erred when it denied his request for advisory counsel. The People assert the denial of a request for advisory counsel is not reviewable on appeal because a defendant does not have a right to advisory counsel.

"[A] defendant who elects to represent himself or herself has no constitutional right to advisory or stand-by counsel or any other form of 'hybrid' representation. [Citations.]" (*People v. Garcia* (2000) 78 Cal.App.4th 1422, 1430 (*Garcia*).) A trial court's authority to appoint advisory counsel stems from its power to control courtroom proceedings so as to create a prompt and just disposition of the case. (*Ibid.*) In other words, the appointment of advisory counsel relates to a court's power to control the courtroom proceedings, and not from a constitutional right conferred upon a defendant.

9

In *Garcia*, the appellate court concluded a defendant could not challenge a verdict based upon the denial of advisory counsel. The court reasoned that a denial of advisory counsel contention would essentially have to reflect that the defendant was incompetent in representing himself, and therefore he was denied effective assistance of counsel in the form of advisory counsel. The reviewing court noted that a defendant who represents himself cannot later complain about ineffective assistance of counsel. (*Garcia*, *supra*, 78 Cal.App.4th at pp. 1430-1431.) The court remarked that the defendant in *Garcia* described the poor quality of his self-representation to support the argument that advisory counsel should have been appointed. (*Id.* at p. 1431.) The appellate court concluded "such a challenge is not permitted." (*Ibid.*)

In the instant case, defendant asserts it is "clear from the numerous motions [defendant] himself filed that he was having a difficult time presenting his case and arguments in a cohesive, well supported, well-thought-out manner. With advisory counsel, [defendant] would have proceeded with guidance by one trained in the law." Defendant's argument suffers from the same problems as the defendant in *Garcia*. Defendant is asserting his self-representation was inadequate and therefore the verdict must be reversed. We agree with *Garcia* that "a defendant who has competently elected to represent himself should not be heard to complain that he was denied the assistance of advisory or stand-by counsel." (*Garcia, supra,* 78 Cal.App.4th at p. 1431.) Thus, we agree with the People that this contention is not reviewable on appeal.

Defendant contends a defendant has a right to advisory counsel, although the right is not a constitutional one. Defendant asserts that if a denial of advisory counsel is

10

not reviewable on appeal, then a trial court could render arbitrary rulings with no recourse for a defendant. Defendant urges this court to reject the holding of *Garcia*. In *People v. Bigelow* (1984) 37 Cal.3d 731, 742-743, our Supreme Court concluded that the trial court failed to exercise its discretion concerning the capital defendant's request for advisory counsel and the trial court would have erred if it denied the defendant's request for advisory counsel. The Supreme Court's reasoning repeatedly referred to the importance of having advisory counsel in the case because it was a death penalty matter with novel issues. (*Id.* at p. 743.) Cases such as *Garcia*, have not extended *Bigelow* to ordinary felony trials. (*Garcia*, *supra*, 78 Cal.App.4th at pp. 1428-1429.)

Given that defendant's argument could be correct if *Bigelow* were extended to non-capital cases, we elect to address the merits of defendant's contention.[6] We review a trial court's denial of advisory counsel for an abuse of discretion. (*People v. Bigelow*, *supra*, 37 Cal.3d at p. 743.) Factors to consider when reviewing the trial court's ruling include: (1) the complexity of the legal and factual issues; (2) the seriousness of the charges; (3) the defendant's level of education; and (4) the defendant's familiarity with California law.

When the trial court denied defendant's motion, it said it "considered the simplicity of the charges mere possession and the defendant[']s legal abilities. The Court [found] that advisory [c]ounsel is unnecessary to defendant's preparation and

---

[6] The People contend defendant forfeited the issue for appeal by retaining trial counsel. We choose to address the merits of defendant's contention because it is easily resolved.

11

presentation of his defense." The trial court's ruling is reasonable. At the time defendant was denied advisory counsel, he was charged with (1) possession of a firearm by a felon (§ 12021, subd. (a)(1)); (2) possession of ammunition by a felon (§ 12316, subd. (b)(1)), which is a misdemeanor; and (3) carrying a concealed firearm (§ 12025, subd. (a)(1)). It was also alleged that defendant suffered multiple strike convictions.

The charges were serious to the extent that they involved multiple strike allegations, thus creating the possibility of a long prison term. However, the factual and legal issues were not complex. The charges involved settled law. The primary factual dispute was whether defendant's mother asked him to clean the trunk of her car.

Additionally, at the time the trial court ruled on the request, defendant had filed a *Pitchess* motion, a motion to prepare an adequate defense (access to a law library), a motion to suppress evidence, and a motion to disqualify the trial judge. In response to defendant's "adequate defense" motion, the trial court ordered the jail to provide defendant "adequate indigent supplies," appointed an investigator for defendant, and authorized $600 for the investigator. Given the motions filed by defendant, the trial court could reasonably conclude defendant was sufficiently familiar with California law. Thus, the trial court's decision was within reason because the record supports the trial court's determinations that the case was not legally or factually complex and that defendant was familiar with California law.

D.      INEFFECTIVE ASSISTANCE OF COUNSEL

1.      *PROCEDURAL HISTORY*

After the verdicts were rendered, defendant filed a motion for new trial.  In the motion, defendant asserted his trial counsel was ineffective, in part, because he coerced defendant into not testifying at trial.  Defendant testified at the hearing on the motion. Defendant stated that he knew he had a right to testify, and had testified on his own behalf in a prior case.  The prosecutor asked how defendant was coerced when it appeared defendant had "no problem firing [his] attorneys."  Defendant explained that his trial attorney, Mr. Davis, repeatedly told defendant to be quiet when defendant would say he wanted to testify while the jury was present.  Mr. Davis also told defendant he would object and try to be relieved as counsel if defendant attempted to testify.

When denying defendant's new trial motion, the trial court made the following statements:  "I observed the interaction of [defendant] and Mr. Davis during the trial and I have no doubt that Mr. Davis clearly advised [defendant] he should not testify and that if he did testify, he may have used the words 'he would be eaten alive by the DA.' That was valid advice based on the defendant's numerous prior felony convictions. Clearly, the DA had substantial evidence with which to destroy the credibility of defendant."

2. *DISCUSSION*

Defendant contends his trial counsel was ineffective because he (1) coerced defendant into not testifying at trial, and (2) failed to introduce documentary evidence about defendant's mother's storage unit.[7]

"To establish ineffective assistance of counsel, defendant must show both: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. [Citations.]" (*People v. Cowan* (2010) 50 Cal.4th 401, 493, fn. 31.) "Although tactical decisions at trial are generally counsel's responsibility, the decision whether to testify, a question of fundamental importance, is made by the defendant after consultation with counsel. [Citations.]" (*People v. Carter* (2005) 36 Cal.4th 1114, 1198.) If a defendant or his counsel did not inform the trial court of the defendant's desire to testify, then the appellate court "may not assume that [the] defendant in fact had insisted upon testifying." (*Id.* at p. 1199.)

During the hearing on the motion for new trial, defendant stated that he wanted to testify at trial, but his attorney threatened to be relieved as counsel if defendant attempted to testify. Despite defendant's numerous *Marsden* motions at the trial court, he failed to mention to the court that he desired to testify. There were multiple occasions when defendant was present, in court, while the jury was not in the courtroom, but defendant never informed the court that he wanted to exercise his right to testify.

---

[7] The People assert defendant forfeited this contention by failing to raise it at the trial court. We choose to address the issue on its merits.

14

The trial court's determination concerning defendant's credibility is entitled to deference if supported by substantial evidence. (*People v. Nesler* (1997) 16 Cal.4th 561, 582.) In this case, the trial court did not believe defendant was credible when he said he insisted upon testifying. This determination is supported by the facts that (1) there were many opportunities for defendant to raise the testimony issue during trial, and (2) he appeared adept at raising concerns about his various attorneys. Thus, it can reasonably be inferred that it is unlikely defendant would have simply sat quietly while his trial counsel refused to assist him if he elected to testify. Accordingly, substantial evidence supports the trial court's conclusion that defendant's testimony was not credible as it concerned his conversations with his trial counsel.

Given the state of the record, we cannot conclude that defendant insisted upon exercising his right to testify during trial. (See *People v. Carter*, *supra*, 36 Cal.4th at p. 1199.) As a result, we must conclude defendant's trial counsel was not ineffective in this regard.

Defendant asserts the trial court did not find make a finding about defendant's credibility. While we believe the credibility finding can be inferred from the ruling, we will assume defendant is correct in order to thoroughly address the issue. Defendant wanted to testify in order to "tell [his] side of the story." It is unclear to what exactly defendant would have testified; however, it appears defendant would have corroborated Gladney's testimony about the gun being in Vaughn's possession after the move at the storage facility. Thus, defendant's testimony would have been cumulative of Gladney's testimony, while opening the door for the jury to learn about defendant's prior

15

convictions.  Since the only new information the jury would have learned from defendant's testimony concerned defendant's prior convictions, we conclude defendant was not prejudiced by the alleged deficient performance.

Next, defendant asserts his trial counsel was ineffective because he should have introduced documentary evidence reflecting Gladney rented a unit at the storage facility and moved to a new unit within the storage facility.  Defendant asserts the evidence would have corroborated Gladney's testimony.  When the reasons for an attorney's decisions are not apparent from the record, "'we will not assume inadequacy of representation unless counsel had no conceivable tactical purpose.'  [Citation.]" (*People v. Hines* (1997) 15 Cal.4th 997, 1065.)

It is not clear from the record why counsel did not present documentary evidence concerning the storage unit.  It is possible counsel believed Gladney's testimony would be sufficient; or that it would be better to focus attention on the gun evidence, such as the lack of fingerprints on the gun, rather than the fact that the gun belonged to defendant's mother, so as to draw attention away from defendant's close connection to the gun.  In sum, we cannot conclude counsel's performance was deficient because there are possible tactical reasons for trial counsel's action or lack of action.

## DISPOSITION

The judgment is modified to reflect defendant's sentence on Count 2 is stayed pursuant to Penal Code section 654. The trial court is directed to issue an amended abstract of judgment reflecting the modified sentence and forward it to the appropriate agency or agencies. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>MILLER                            </u>
                                                    J.

We concur:

<u>HOLLENHORST                </u>
                    Acting P. J.

<u>KING                                  </u>
                        J.

17