Filed 6/27/14  P. v. Cancino CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048819 |
| v. | (Super. Ct. No. 11NF0610) |
| DAVID CANCINO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Jonathan S. Fish, Judge.  Affirmed as modified.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Ryan H. Peeck, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant David Cancino of possession of a firearm by a prohibited person (Pen. Code, § 12021, subd. (a)(1); count 1)[1] and possession of ammunition by a prohibited person (§ 12316, subd. (b)(1); count 2). The jury found true the allegations defendant committed both crimes for the benefit of a gang. (§ 186.22, subd. (b)(1).) The court found defendant had suffered a prior conviction of a serious felony and strike offense (§ 667, subds. (a)(1), (d), (e)(1)) for which defendant had served a prison term (§ 667.5, subd. (b)). The court sentenced defendant to a total term of 14 years in prison, comprised of six years on count 1, three years on the gang enhancement to count 1, and five years for the prison prior. The court imposed a concurrent term of six years on count 2.

On appeal defendant contends the court (1) abused its discretion by admitting evidence of a statement made by a member of defendant's gang, and (2) should have stayed execution of sentence on count 2. We agree that section 654 bars punishment on count 2, but we disagree with defendant's evidentiary challenge. Accordingly, we impose a stay of sentence on count 2. As modified, we affirm the judgment.

FACTS

Defendant was a member of the Plas gang. Plas has a long history of violent encounters with its rival, the La Jolla gang. On two occasions in early February 2011, members of the La Jolla gang drove into territory claimed by Plas and committed assaults.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

2

On the evening of February 19, 2011, police officers were dispatched to the scene of a reported gang fight involving gang members using sticks and baseball bats on La Jolla Street in territory claimed by the La Jolla gang.

One responding officer saw three individuals standing on a street corner, at least two of whom were La Jolla gang members. Upon seeing the officer, the three individuals took off running.

Two other officers responded to a different location in the neighborhood and found defendant's car parked in the street blocking several lanes. Defendant got out of the driver's side door and walked toward the rear of the car, wearing baggy clothes commonly worn by gang members. A sawed off rifle loaded with three rounds of ammunition was on the car's driver's seat.

An officer transported defendant to the police station. En route, defendant spontaneously asked, "Why didn't you let me take care of business?" and "What happened in La Jolla?"

Outside the police station, two officers escorted defendant from the police car toward the jail. A Plas gang member named Michael Terrones was standing in the rain on the roof of a nearby police parking structure. Terrones yelled, "Hey. What happened? What happened?" Defendant did not respond to Terrones. Officers ordered Terrones to get off the roof, which was a restricted area. Terrones came down and got in the passenger side of a car registered to defendant's brother.[2] The car sped away.

A gang expert testified that Plas and La Jolla are rival street gangs, that each gang has killed members of the other gang, and that defendant was a Plas member in 2007 when he shot into an occupied dwelling (an offense to which defendant pleaded guilty as an aider and abettor). Defendant also assaulted a La Jolla gang member in 2005.

---

[2] The car was registered to Tony Cancino. The prosecutor (at a pretrial hearing) and defendant (in his appellant's opening brief) stated that Tony Cancino is the brother of defendant, David Cancino.

DISCUSSION

*The Court Did Not Abuse Its Discretion by Admitting Terrones's Statement*

Defendant contends the court abused its discretion by admitting Terrones's statement, "What happened?" Defendant asserts the evidence was irrelevant and unduly prejudicial under Evidence Code section 352.

In a pretrial motion in limine, the prosecutor sought a ruling on the admissibility of Terrones's question, "What happened?", and Terrones's membership in Plas. The prosecutor argued the proffered evidence would show that other Plas gang members knew of defendant's arrest and of his activities preceding his arrest. The prosecutor concluded the evidence was relevant to show defendant possessed the rifle as part of Plas gang activity and to benefit the gang.

Defense counsel argued Terrones's statement was irrelevant and unduly prejudicial because there was no evidence that Terrones was present or associating with or directing defendant during the crime and no evidence of when Terrones became aware of defendant's presence.

The court ruled the proffered evidence was relevant to circumstantially prove defendant's actions were in association with a gang.

On appeal defendant argues: "The prosecution could not prove that [defendant] knew Terrones was on the roof or had any contact or communication with him prior to being arrested. [Defendant] didn't attempt to respond to Terrones in any way and therefore the only fact that was established by the evidence was that Terrones knew [defendant] was at the station and asked him the general question, 'What happened?' That question was not directly tied to any specific crime or action by [defendant] and because Terrones was never arrested or contacted for further investigation [citation] the prosecution could not establish why he was there or what he was specifically referring to." In defendant's view, Terrones's "mere proximity and

4

question had no relevance to the topic upon which it was being offered and merely allowed the jury to improperly speculate that [defendant] was part of a [Plas plan to fight La Jolla] concerning which there was no evidence."

Under Evidence Code section 210, evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." A court's ruling on the relevance of evidence is reviewed for an abuse of discretion. (*People v. Thornton* (2007) 41 Cal.4th 391, 444-445.)

The court did not abuse its discretion by ruling Terrones's statement was relevant to the gang enhancement. Based on Terrones's question, "What happened?" and the timing of his presence on the roof, the jury could reasonably infer that Terrones wanted to find out from defendant what had happened in Plas's fight with La Jolla. The evidence strongly suggested Terrones had a compelling reason to be there. He was standing in the rain on the roof of a police garage where no civilians were allowed. Earlier that evening, significant events had occurred. First, the police received a report that a gang fight was taking place in territory claimed by La Jolla. Second, La Jolla gang members were spotted there. Third, defendant was found in territory claimed by La Jolla with his car blocking the street and a loaded gun in the vehicle. Fourth, defendant said in the patrol car, "Why didn't you let me take care of business?" and "What happened in La Jolla?" That Terrones, along with Tony Cancino's car, were at the police station soon after these events occurred was strong evidence that the Plas gang knew of defendant's activities and that Plas jointly planned, communicated, and/or participated in the fight against La Jolla — a fight which defendant intended to benefit or promote by possessing a loaded rifle.

Nor did the court abuse its discretion under Evidence Code section 352 by admitting Terrones's statement. "Under Evidence Code section 352, the court has discretion to exclude relevant evidence ""if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption

5

of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" [Citation.] "'The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against [the] defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.'"'" (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119.)

The evidence of Terrones's statement was unlikely to evoke an emotional bias against defendant since it was not inflammatory and since other evidence showed defendant was a Plas gang member. On the other side of the scale, Terrones's statement was strongly probative on the issue of whether defendant acted for the benefit of his gang. The court did not abuse its discretion under Evidence Code section 352.

*Execution of Sentence on Count 2 Must Be Stayed Under Section 654*

The parties agree that the court should have stayed the concurrent sentence on count 2 because his possession of the firearm and the ammunition was part of an indivisible course of conduct for purposes of section 654. In *People v. Lopez* (2004) 119 Cal.App.4th 132, officers found a loaded handgun in the defendant's front pocket. (*Id.* at p. 135.) A jury convicted him, inter alia, of unlawful possession of a firearm and ammunition. (*Id.* at p. 134.) The court sentenced him to prison for the handgun possession conviction and to a concurrent prison term for the ammunition possession conviction. (*Id.* at p. 137.) On appeal, the defendant argued "that the sentence for unlawful possession of ammunition should be stayed because possession of the firearm and the ammunition was an 'indivisible course of conduct'" for purposes of section 654. (*Lopez*, at p. 137.) The appellate court found the defendant's "obvious intent was to possess a loaded firearm." (*Id.* at p. 138.) It held: "Where, as here, all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present and section 654 precludes multiple punishment." (*Ibid.*)

6

Here, too, the ammunition was loaded in the firearm and defendant's obvious intent was to possess a loaded firearm. Such possession was an indivisible course of conduct for purposes of section 654. The court should have stayed execution of sentence on count 2.

## DISPOSITION

The six-year concurrent sentence for count 2, unlawful possession of ammunition by a prohibited person, is stayed pending service of sentence on count 1, such stay to become permanent upon completion of sentence as to count 1. The superior court is directed to prepare an amended abstract of judgment and send it to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.


IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.