Filed 11/30/15  P. v. Rauda CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY RAUDA,<br><br>    Defendant and Appellant. | 2d Crim. No. B258675<br>(Super. Ct. No. 2014012533)<br>(Ventura County) |

Anthony Rauda appeals from the judgment entered after a jury convicted him of carrying a loaded firearm (count 1 - Pen. Code, § 25850, subd. (a));[1] possession of a firearm by a convicted felon (count 2 - § 29800, subd. (a)(1)); possession of ammunition by a person prohibited from possessing a firearm (count 3 - § 30305, subd. (a)(1)); and public intoxication, a misdemeanor (count 4 - § 647, subd. (f)).  The jury found true allegations that appellant had served two prior separate prison terms. (§ 667.5, subd. (b).)  Appellant was sentenced to prison for five years, eight months, as follows: a three-year upper term on count 1, a consecutive term of eight months on count 3, a concurrent term of 30 days (deemed served) on count 4, plus two years for the two prior prison terms.  The court imposed a three-year upper term on count 2 but stayed execution pursuant to section 654.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

Appellant contends (1) the evidence is insufficient to support his conviction for carrying a loaded firearm, (2) the trial court erroneously failed to instruct the jury sua sponte on the meaning of "ammunition," (3) the evidence is insufficient to support his conviction for unlawful possession of ammunition, (4) he was subjected to multiple punishment in violation of section 654, (5) the trial court abused its discretion in admitting evidence that a knife was found in his possession, (6) he was denied his right to counsel, and (7) he was denied his right to confront witnesses. Only the first contention has merit. We reverse the conviction for carrying a loaded firearm and affirm in all other respects. The reversal does not change appellant's total prison term of five years, eight months.

*Facts*

Deputy Sheriffs Jeffrey Stuteville and Travis Clemens found appellant lying in bushes across the street from Oak Park High School. Appellant was in an "unincorporated area of Oak Park." Stuteville yelled at appellant and shook his leg, but he did not respond. Stuteville "smell[ed] a strong odor of alcohol coming from him."

In an attempt to determine appellant's identity, Stuteville searched his backback. He found a handgun with six chambers. All of the chambers were loaded. He also found "a standard kind of steak knife, kitchen knife."

The handgun was a .44 caliber "cap and ball . . . black powder revolver." Sergeant Romano Bassi, a firearms expert, opined that it was probably "a replica" of an older type of firearm that was "used before the introduction of cartridge bullet rounds." It was "kind of like the old musket civil war type rifles." The ammunition for the firearm consists of three separate parts: a percussion cap, black powder, and "a round ball [that] is the projectile." In modern firearms the projectile would be the bullet. Bassi could see the percussion caps and the round balls. Because the seal between the balls and caps was "so tight," he "could not see . . . the gunpowder behind the ball[s]."

2

Inside appellant's backpack and separate from the handgun, Deputy Stuteville found percussion caps and "the black powder required to make the weapon fire." Stuteville "believe[d]," but did not "know for certain," that the backpack contained "one ball round."

*Sufficiency of the Evidence to Support the*
*Conviction of Carrying a Loaded Firearm*

Section 25850, subdivision (a) provides that, to be guilty of carrying a loaded firearm, a person must carry it "in any public place or on any public street in an incorporated city or in any public place or on any public street in a *prohibited area of an unincorporated territory*." (Italics added.) Appellant carried a firearm in an "unincorporated area of Oak Park." He could be found guilty only if this area was a "prohibited area," which "means any place where it is unlawful to discharge a weapon." (§ 17030.)

The trial court erroneously instructed the jury that the People must prove that "the defendant was in a public place or on a public street in an incorporated city." The court's instruction mentioned nothing about being in "a prohibited area of unincorporated territory." (§ 25850, subd. (a).) Appellant contends that the evidence is insufficient to support his conviction because it is undisputed that he was in unincorporated territory, not an incorporated city, and "[t]he prosecution presented the jury with zero evidence that the area where deputies found [him] constituted a prohibited area . . . ."

There are two issues here. The first issue, which was not briefed by the parties, is whether the conviction must be reversed because the jury was not instructed on an element of the offense - that appellant must have been in "a prohibited area of unincorporated territory." (§ 25850, subd. (a).) The second issue is whether the evidence is sufficient to show that he was "in a prohibited area of unincorporated territory." (*Ibid*.) We need not consider the first issue because the second issue is dispositive.

3

"When a defendant challenges the sufficiency of the evidence, ' "[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence - that is, evidence which is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.] [Citation.]' [Citation.] We ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " [Citation.]' [Citation.]" (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.)

The People argue that the evidence is sufficient to show that appellant was in a prohibited area because Deputy Stuteville found him lying in bushes across the street from Oak Park High School. Based on section 626.9, known as "the Gun-Free School Zone Act of 1995" (*Id*., subd.(a)), the People assert that the jury could have reasonably inferred from the proximity of the school that appellant was in a prohibited area. Section 626.9, subdivision (b) prohibits the possession of a firearm in a "school zone," which includes an area "within a distance of 1,000 feet from the grounds of the public or private school." (*Id*., subd. (e)(1).).

During closing argument, the prosecutor stated that the People needed to prove only that appellant was in a "public place," which she defined as "a place where anyone from the public can go." The prosecutor said nothing about the requirement of being in a prohibited area. "The prosecution . . . cannot now change its theory on appeal and argue that [appellant was in a prohibited area because he was in a gun-free school zone.] 'It is elementary that a new theory cannot be raised on appeal where, as here, the theory contemplates factual situations the consequences of which are open to controversy and were not put in issue in the lower court. [Citation.]' [Citations.] Section [25850, subdivision (a) requires that appellant possess the firearm in a prohibited area]. That factual question was not litigated and was subject to

4

controversy. Consequently, that theory cannot be used to save the conviction." (*People v. Moses* (1990) 217 Cal.App.3d 1245, 1252-1253.)

Furthermore, the jury was not informed of the Gun-Free School Zone Act of 1995. The Act, therefore, is not part of the record evidence. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the *record evidence* could reasonably support a finding of guilt beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318 [99 S. Ct. 2781, 61 L. Ed. 2d 560], fn. omitted, italics added.) Accordingly, appellant's conviction of carrying a loaded firearm must be reversed for insufficiency of the evidence.

### Jury Instruction on Meaning of Ammunition

Appellant was charged with possession of ammunition by a person prohibited from owning a firearm. (§ 30305, subd. (a)(1).) He contends that the trial court erroneously failed to instruct the jury sua sponte that the term "ammunition" does not include ammunition designed for and intended to be used in an antique firearm. Appellant claims that he possessed an antique firearm and that any ammunition in his possession was intended to be used in that firearm.

The alleged instructional error is based on section 16650, subdivision (b)(1), which provides, "As used in Section 30312 and in Article 3 (commencing with Section 30345) of Chapter 1 of Division 10 of Title 4, 'handgun ammunition' does not include . . . [a]mmunition designed and intended to be used in an antique firearm." Section 16650, subdivision (b)(1) does not refer to the charged offense of violating section 30305, subdivision (a)(1). Section 16150 defines "ammunition" as used in section 30305, subdivision (a), and it mentions nothing about an antique firearm. Moreover, there is no evidence that appellant's handgun was a genuine antique. Sergeant Bassi, the firearms expert, testified that it was probably "a replica" of an older type of firearm. The trial court therefore did not have a duty to instruct sua sponte that the term "ammunition" does not include ammunition designed for and intended to be used in an antique firearm.

5

*Sufficiency of the Evidence to Support the*

*Conviction of Unlawful Possession of Ammunition*

During closing argument, the prosecutor presented two theories for convicting appellant of unlawfully possessing ammunition. One theory was "that the firearm itself had ammunition in it." The other theory was "that there was an extra lead ball that was separate from the gun which counts as possession of the ammunition." Appellant argues that, if the conviction was based on ammunition in the firearm, the evidence is insufficient because the People "failed to show that the gun was actually loaded." If the conviction was based on the extra lead ball, the evidence is insufficient because the People failed to show "that a separate ball round was actually found in appellant's backpack."

The evidence is sufficient to show that appellant's handgun was loaded with ammunition. "As used in subdivision (a) of Section 30305 . . . , 'ammunition' includes, but is not limited to, any bullet, cartridge, magazine, clip, speed loader, autoloader, or projectile capable of being fired from a firearm with a deadly consequence." (§ 16150, subd. (b).) Sergeant Bassi could see the percussion caps and round balls inside the handgun's chambers. Because the seal between the balls and caps was "so tight," he "could not see . . . the gunpowder behind the ball[s]." But it is reasonable to infer that gunpowder was there. Otherwise, the handgun could not have been fired and would have been useless. Appellant had access to gunpowder. Deputy Stuteville found gunpowder inside appellant's backpack.

We need not and do not determine whether the evidence is sufficient to support appellant's conviction based on the prosecutor's alternative theory that appellant possessed in his backpack "an extra lead ball that was separate" from the firearm. If the evidence were insufficient to support his conviction on this theory, we would still uphold his conviction on the theory that the firearm itself contained the requisite ammunition. "[I]f one of the prosecution's alternative theories of criminal liability is found unsupported by the evidence, the judgment of conviction may rest on any legally sufficient theory unaffected by the error, unless the record affirmatively

6

demonstrates that the jury relied on the unsupported ground. [Citations.]" (*People v. Johnson* (1993) 6 Cal.4th 1, 42, overruled on another ground by *People v. Rogers* (2006) 39 Cal.4th 826, 879.) The record does not affirmatively demonstrate that the jury relied on the alternative theory that appellant possessed an extra lead ball in his backpack.

*Section 654*

Appellant argues that, because he was sentenced on count 1 for possessing a loaded firearm, the sentence imposed on count 3 for possessing ammunition must be stayed pursuant to the multiple punishment proscription of section 654. Since we are reversing the conviction on count 1, this issue is moot.

The multiple punishment issue is not moot as to count 2, possession of a firearm by a convicted felon. In view of appellant's sentence on count 1 for carrying a loaded firearm, pursuant to section 654 the trial court stayed execution of the sentence on count 2. Because we are reversing the conviction on count 1 for insufficiency of the evidence, the stay on count 2 must be vacated. Thus, the question is whether section 654 prohibits sentencing appellant for both possession of ammunition and possession of a firearm by a convicted felon.

"The prohibition on multiple punishments in section 654 extends to a single act or an indivisible course of conduct. [Citation.] ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' [Citation.]" (*People v. Leonard* (2014) 228 Cal.App.4th 465, 498-499.) " 'Whether the defendant held "multiple criminal objectives is primarily a question of fact for the trial court, whose finding will be upheld on appeal if there is any substantial evidence to support it." [Citations.]' [Citation.] We must 'view the evidence in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the

7

evidence.  [Citation.]'  [Citation.]"  (*People v. McGuire* (1993) 14 Cal.App.4th 687, 698.)

In *People v. Lopez* (2004) 119 Cal.App.4th 132, 138, this court held, "Where . . . all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present and section 654 precludes multiple punishment" for unlawful possession of a firearm and possession of ammunition by a person prohibited from possessing a firearm.  Here, it is reasonable to infer that all of the ammunition was not loaded into appellant's handgun.  Inside appellant's backpack, Deputy Stuteville found percussion caps and "the black powder required to make the weapon fire."  Stuteville "believe[d]," but did not "know for certain," that the backpack also contained "one ball round."[2] The trial court could have reasonably concluded that, by possessing the loaded firearm and the separate ammunition in the backpack, appellant had committed separate physical acts instead of a single act or an indivisible course of conduct.  It is reasonable to infer that appellant possessed the ammunition in the backpack so that he could reload the firearm and use it on different occasions.

*Admission of Evidence of Knife*

Appellant asserts that the trial court erroneously admitted evidence that a knife was found inside his backpack.  He argues that the court abused its discretion because the probative value of this evidence was "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice."  (Evid. Code, § 352.)[3]  "Evidence is prejudicial within the meaning of Evidence Code section 352 if it ' "uniquely tends to evoke an emotional bias against a party as an individual" '

---

[2] Without a supporting citation to the record, the People quote an alleged excerpt from Sergeant Bassi's testimony indicating that he saw ball rounds inside the backpack.  But Bassi clearly testified that the only ball rounds he had seen were inside the handgun's chambers.

[3] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ."

[citation] or if it would cause the jury to ' " 'prejudg[e]' a person or cause on the basis of extraneous factors" ' [Citation.]" (*People v. Cowan* (2010) 50 Cal.4th 401, 475.)

A court abuses its discretion when it " 'exceeds the bounds of reason, all of the circumstances before it being considered.' [Citations.]" (*People v. Russel* (1968) 69 Cal.2d 187, 194, overruled by statute on another ground as noted in *People v. Anderson* (2001) 25 Cal.4th 543, 575.) The trial court acted within its discretion. Appellant told the court that he had in his backpack "a fillet knife" that he "use[d] to cut meat." Its blade was not more than two and one-half inches long. The prosecutor said she would not argue that appellant had intended to use the knife for a criminal purpose. She wanted it admitted "just for the whole truth of what was done at the scene, what the officers did, their procedure, what they found." The trial court ruled, "[T]he small knife is fine . . . . [T]here's no bad inference about that." The court reasonably concluded that, considering all of the circumstances, evidence of the small fillet knife would not "create substantial danger of undue prejudice." (Evid. Code, § 352.)

*Right to Counsel*

Appellant waived his right to counsel and elected to represent himself. We reject his contention that the trial court violated his "Sixth Amendment right to adequate counsel" by denying his request for advisory counsel. "[A] defendant who elects to represent himself or herself has no constitutional right to advisory or stand-by counsel or any other form of 'hybrid' representation. [Citations.]" (*People v. Garcia* (2000) 78 Cal.App.4th 1422, 1430; see also *People v. Moore* (2011) 51 Cal.4th 1104, 1120 ["there is no constitutional right to hybrid representation"].)

Appellant argues that the trial court also violated his constitutional right to counsel by denying his request for copies of the Penal and Evidence Codes. Appellant told the court that he needed these codes so he "could reference [them] while the trial's going on." He "want[ed] to verify that the officers followed a certain standard according to the Penal Code, that they obeyed the law or that they . . . charged [him] correctly." The trial court replied that, in view of the denial of appellant's pretrial

9

section 1538.5 motion, the legality of the deputies' conduct was no longer an issue in the case. "[W]e're no longer litigating the legality of the police conduct." "So I'm not going to have the bailiff give you a Penal Code or Evidence Code . . . . You're just going to have to do your research, write it on a piece of paper . . . ."

" ' "[A] defendant who is representing himself or herself may not be placed in the position of presenting a defense without access to a . . . law library . . . or any other means of developing a defense." ' [Citation.] But 'the Sixth Amendment requires only that a self-represented defendant's access to the resources necessary to present a defense be *reasonable under all the circumstances.*' [Citation.]" (*People v. Moore*, *supra*, 51 Cal.4th at pp. 1124-1125.) The trial court did not unreasonably deny appellant's request for copies of the codes. Appellant did not show that he was unable to access the codes at the jail law library and do his research there.[4] Moreover, the trial court correctly informed him that the legality of the deputies' conduct was no longer an issue in the case. (See § 1538.5, subds. (h), (i), (m); *People v. Memro* (1985) 38 Cal.3d 658, 666, fn. 3, overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.) In any event, appellant has failed to show that he was prejudiced by his inability to "reference [the codes] while the trial's going on."

*Right to Confront Witnesses*

Appellant argues that he was denied his Sixth Amendment right to confront the deputies who testified against him: "The court prevented [him] from cross-examining the deputies regarding the propriety of his detention and search of his backback, because a previous judge had denied [his] motion pursuant to section 1538.5." The trial court told appellant: "[Y]ou can certainly ask the deputies what happened to explain all the circumstances. It's just the judge has decided that that search was legal."

---

[4] In his opening brief, appellant asserts that he "explained to the trial judge that he had difficulty accessing the law library during trial." We disregard this assertion because it is not supported by citation to the record. (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 ["an appellate court *may* disregard any factual contention not supported by a proper citation to the record"].)

The trial court did not violate appellant's constitutional right to confront witnesses. Appellant had the opportunity to cross-examine the deputies at the section 1538.5 hearing. He could not relitigate the issue at trial. (*People v. Memro*, *supra*, 38 Cal.3d at p. 666, fn. 3.)

*Disposition*

The conviction on count 1 of carrying a loaded firearm (§ 25850, subd. (a)) is reversed for insufficiency of the evidence. The stay of execution of the three-year upper term imposed on count 2, possession of a firearm by a convicted felon (§ 29800, subd. (a)(1)), isvacated. In all other respects, the judgment is affirmed. Appellant's total prison term - five years, eight months - remains the same. The trial court shall prepare an amended abstract of judgment and transmit a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.


11

Charles W. Campbell, Jr., Judge

Superior Court County of Ventura

_____

Laurie A. Thrower, under appointment by the Court of Appeal, for Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.