Filed 6/5/15  P. v. Rodriguez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074744 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F06492) |
| v. | |
| MARIO RODRIGUEZ, | |
| Defendant and Appellant. | |

A jury found defendant Mario Rodriguez guilty of being a felon in possession of a firearm and in possession of ammunition.  In connection with the firearm charge, the jury found a gang enhancement to be true.

Sentenced to prison for four years eight months, defendant appeals, contending: (1) insufficient evidence supports the gang enhancement, specifically the finding that he

possessed the firearm for the benefit of or to promote a gang; and (2) Penal Code[1] section 654 barred a concurrent sentence on the ammunition charge. We conclude sufficient evidence supports the gang enhancement but agree with defendant and the People that section 654 bars separate punishment for the ammunition charge. Accordingly, we will modify the judgment to stay the sentence on the ammunition charge and affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2012, a search by probation officers of a home located on Duff Court revealed an unloaded gun wrapped in plastic, a box of ammunition with two rounds missing, and an empty magazine, all together in a case wedged between the refrigerator and the wall. Nearby, an officer found defendant's identification in a wallet in the pocket of a pair of tan pants. Four people lived in the house. Defendant, who was present at the time of the search, shared a bedroom with his brother Daniel Rodriguez and the other bedroom belonged to defendant's sister Miriam and his brother-in-law Julio Gonzalez.

Defendant was interviewed by Citrus Heights Police Sergeant Michelle Perez. The audiotape of the interview was played for the jury. Defendant claimed the gun, ammunition, and magazine belonged to him, that no one else in the house knew about the gun, and that after his friend was killed, defendant bought the gun, ammunition, and magazine for $200 from some "random black guy" at a quick stop. Defendant bought the gun for protection. Defendant put the case with the gun and other items where it was found to make it easily accessible. After the friend's funeral in July 2012, a car pulled up outside defendant's house, someone yelled something, a shot was fired through the window into the couch, and the car drove away. Defendant did not know who had shot at the house but thought it was "[m]ost likely" Norteños. When asked if the shooter knew

---

[1]     Undesignated section references are to the Penal Code.

2

"you guys are Sureño," defendant responded, "[s]omethin' like that." Defendant then denied that his brother Daniel had a gang file. When asked if defendant was "the only one that kind of represents Sureños," defendant replied, "Yeah. [¶] . . . [¶] Well, I don't represent. [¶] . . . [¶] That was back in the day. But . . . . [¶] . . . [¶] I guess you could say that with . . . [¶] . . . [¶] tattoos and all that."

At trial, Sergeant Perez testified as an expert on Hispanic gangs, specifically Sureños, identifying three members and the gang's primary criminal activities as including homicide, felony and misdemeanor assault, possession of firearms and ammunition by felons and other members, drive-by shootings, and robberies. Sergeant Perez also described prior offenses of the Sureños. On October 1, 2010, defendant's brother-in-law Julio Gonzalez, a member of Barrio Sur Tres, a subset of the Sureños, pulled out a firearm and shot a Norteño gang member in the foot. Gonzalez was convicted of possession of a firearm with a gang enhancement. On March 2, 2008, Juan Gonzalez Rangel's bedroom was searched and a handgun wrapped in a blue handkerchief was found. Rangel was convicted of possession of a firearm with a gang enhancement.

Sergeant Perez testified that defendant was a validated Barrio Sur Tres gang member based upon his contacts with law enforcement officers, his numerous gang tattoos, and his criminal activity. Defendant earned the gang moniker "Spooky" and had contact with other Sureño gang members including Daniel, his brother, and Julio Gonzalez, his brother-in-law. Defendant had previously admitted to law enforcement officers that he was a gang member. On May 30, 2008, defendant was riding in a car stopped by officers who found a firearm. Defendant, who was wearing gang clothing, admitted being a Sureño. The other passengers were also Sureño gang members. On February 10, 2009, defendant was at a party with two other Sureño gang members. Defendant admitted that he was a Sureño gang member and that his car had a gun in it. In October 2010, defendant was wearing gang clothing and was arrested for having a firearm in a car in which there were two other Sureño gang members. Defendant

3

admitted he was a gang member. In March 2011, after defendant and several other Sureño gang members beat another inmate, a search of defendant's cell revealed Barrio Sur Tres gang graffiti marked flip-flops belonging to defendant and a piece of paper listing the Sureño gang rules. Defendant's cellmate also had a gang moniker.

Defendant lived in the North Highlands area. In that area, at the time of defendant's current offenses, Sergeant Perez stated there was Norteño and Sureño gang activity by armed gang members, including robberies and shootings. Perez also stated that there had been a lot of Norteño activity on A Street, which was off of Watt Avenue.

Based on her training and experience, Sergeant Perez testified that she believed that a person is committing a gang-related shooting when a car pulls up to a house, the person yells something, shoots, runs back to the car, and the car drives away. She explained that a rival gang member will yell a derogatory term or shout the name of his gang to instill fear and intimidation in the other gang and to gain respect in the community.

The shooting of defendant's friend was being investigated by the sheriff's department. Based on the evidence, Sergeant Perez believed it was gang related because defendant's friend was a Sureño gang member and the shooting occurred within a block of defendant's house.

When a gang member is shot by a rival gang member, Sergeant Perez explained that person is being disrespected. When a gang member's house is shot at by a rival gang, the rival gang is disrespecting the gang member who lives in the house and the typical response would be retaliation. Perez knew that there had been shootings at defendant's house, one on January 13, 2011, and another on July 24, 2012. Someone, but not defendant, contacted the police both times. Perez also explained that a gang member faces serious consequences if he does not help a fellow gang member who has been disrespected by a rival gang.

4

Sergeant Perez testified that criminal activity committed by a gang member benefits the entire gang. She explained that gang members usually share guns, especially if a gang member is on probation or parole. She did not know whether other gang members shared the gun found in defendant's house.

Based on a hypothetical, Sergeant Perez testified that a gang member who lives with two other gang members and had an unloaded gun with ammunition near the front door of the house, or where it was easily accessible because of prior shootings at his house by rival gang members, possessed the gun for the benefit of the gang and "to save face . . . and . . . reputation." Perez also testified that the hypothetical gang member -- who lived in an area more known for the rival gang and with no back up -- possessed the gun in association with his gang.

The parties stipulated that no usable fingerprints were found on the gun or ammunition found in defendant's house, that defendant had previously been convicted of a felony, and that Julio Gonzalez had previously been convicted of illegal possession of a firearm with a gang enhancement.

## DISCUSSION

### I

### *Sufficiency Of The Evidence Of The Gang Enhancement*

Defendant claims there was insufficient evidence upon which the jury could conclude that he possessed the gun "for the benefit of, at the direction of, or in association with [a] criminal street gang," and "with the specific intent to promote, further, or assist . . . criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Defendant argues that sheer speculation supports the conclusion that he possessed the gun for the benefit of the gang rather than his stated purpose of protection. We conclude reasonable inferences from the facts support the jury's conclusion that defendant possessed the gun to benefit or assist the gang.

5

In *People v. Gardeley* (1996) 14 Cal.4th 605, the court stated as follows: "[T]o subject a defendant to the penal consequences of [section 186.22, subdivision (b)], the prosecution must prove that the crime for which the defendant was convicted had been 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.' (§ 186, subd. (b)(1) . . . .) In addition, the prosecution must prove that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting two or more of the enumerated offenses (the so-called 'predicate offenses') . . . ." (*Gardeley*, at pp. 616-617, italics omitted.) "[W]hether and how a crime was committed to benefit or promote a gang" is an appropriate subject for expert testimony. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 656-657; see *People v. Vang* (2011) 52 Cal.4th 1038, 1047, fn. 3 [reaffirming its disapproval of any interpretation of *Killebrew* as barring or limiting the use of hypothetical questions for expert testimony].)

"To assess the evidence's sufficiency, we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict--i.e., evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence

of every fact the jury could reasonably have deduced from the evidence." (*People v. Ramon* (2009) 175 Cal.App.4th 843, 850, italics omitted.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

In arguing that the evidence is insufficient to support the gang enhancement, defendant misplaces his reliance upon *People v. Killebrew*, *supra*, 103 Cal.App.4th at page 644; *In re Frank S.* (2006) 141 Cal.App.4th 1192; *People v. Ochoa* (2009) 179 Cal.App.4th 650; *People v. Ramon*, *supra*, 175 Cal.App.4th at page 843; and *People v. Rios* (2013) 222 Cal.App.4th 542. Unlike the gang expert in *Killebrew*, *Frank S.*, *Ochoa*, and *Ramon*, Sergeant Perez did not simply inform the jury how she felt the case should be resolved. (*Killebrew*, at p. 658; *Frank S.* at p. 1199; *Ochoa*, at pp. 662-663; *Ramon*, at pp. 849, 851.) And this case is also distinguishable from *Rios* in which there was no evidence other than the defendant's gang membership to support the gang enhancement in connection with the defendant's commission of carrying a loaded firearm in the car. (*Rios*, at pp. 564, 573-574.)

Here, Sergeant Perez testified that defendant was actively engaged in the Sureño gang lifestyle. The jury could reasonably conclude that the gang member lifestyle meant defendant possessed the gun in the house he shared with two other gang members as part of his gang activity, not for legitimate self-protection. As a Sureño, defendant, an admitted gang member with a gang moniker who had gang-related tattoos and several contacts with law enforcement, had engaged in prior acts of possessing a gun in the presence of other Sureño gang members. Perez opined gang members share guns and sometimes one member holds it so it is available for other gang members. Defendant claimed he had the gun because his friend, a Sureño gang member, had been killed within a block of defendant's house and defendant believed Norteños were shooting at his house. After his friend's funeral, someone yelled something, shot at his house, and then

7

fled in a car.  Perez opined that a rival gang was disrespecting defendant and his fellow gang members who lived in the house.  Perez testified that at the time of defendant's possession, there had been a lot of shootings in the neighborhood between Norteños and Sureños.  The jury could easily reject defendant's claim that he had the gun simply for self-defense, considering that the gun was in the kitchen, not in defendant's bedroom, was unloaded, and wrapped in a plastic bag, not the manner in which one would maintain a gun for defense.  In the kitchen, defendant's brother and brother-in-law, fellow gang members, would have easy access in order to use the gun offensively, to react to the disrespect, to give them respect, and for retaliation.  Possession of the gun benefited the entire gang and was available to not just the gang members in the house but any other gang member they chose to give it to.  Sufficient evidence supported the inference that defendant's possession of the gun was committed to promote or benefit the Sureño gang.

Alternatively, sufficient evidence supported the inference that defendant possessed the gun "in association with" gang members.  (§ 186.22, subd. (b)(1).)  Here, there was evidence that defendant lived with two other gang members, one of whom had previously been convicted of possession of a firearm to benefit the gang, and defendant had prior acts of possessing a gun in the presence of other gang members.  Sergeant Perez testified that a hypothetical gang member who lived in an area where there was gang activity (shootings, robberies) by Sureños and a lot by Norteños, possessed the gun in association with his gang.  The jury could easily have found defendant's gun possession was committed "in association with" another gang member.

The gang enhancement requires that defendant's gun possession be committed with "the specific intent to promote, further, or assist in any criminal conduct by gang members."  (§ 186.22, subd. (b)(1).)  This element may be proved by the opinion of a gang expert based upon facts shown by the evidence given in a hypothetical, even where the opinion includes an ultimate issue.  (*People v. Vang*, *supra*, 52 Cal.4th at p. 1048;

8

*People v. Gonzalez* (2006) 38 Cal.4th 932, 946-947 & fn. 3; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1551, fn. 4.)

Although Sergeant Perez did not testify about defendant's subjective knowledge or intent, she testified about gang culture and practices with respect to possession of a gun, shootings by a rival gang, and retaliation as a typical response. Sufficient evidence supported the jury's conclusion that defendant's gun possession was committed with the specific intent to assist in criminal conduct by gang members.

## II

### *Section 654 And The Possession Of The Ammunition*

Defendant was charged with, convicted of, and sentenced for unlawful possession of the firearm as well as for unlawful possession of the ammunition found in a box of ammunition. Defendant contends and the People concede that section 654 barred separate punishment for unlawful possession of the ammunition.[2] We agree.

Section 654, subdivision (a) provides in relevant part as follows: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "Section 654 bars multiple punishments for separate offenses arising out of a single occurrence where all of the offenses were incident to one objective" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368) and "prohibits multiple punishment for a single physical act that violates different provisions of law" (*People v. Jones* (2012) 54 Cal.4th

---

[2]     Defendant's failure to object in the trial court does not result in a forfeiture of this claim. (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

9

350, 358). A trial court's implied finding supported by substantial evidence that defendant entertained a separate intent and objective will be upheld on appeal. (*McKinzie*, at p. 1368.)

In support of his section 654 argument, defendant cites the trial court's statement in imposing sentence on the ammunition charge: "It is running concurrent because it was essentially part of the same transaction and the same time. The defendant was convicted of possession of a firearm and possession of the ammunition. It seems appropriate to run that concurrent." According to defendant, this statement shows that the trial court found the two offenses "were an indivisible transaction," and this finding was supported by the fact that defendant "harbored the same intent and objective" in possessing both the firearm and the ammunition, which was "to arm himself in the event his home was attacked."

For their part, the People cite *People v. Lopez* (2004) 119 Cal.App.4th 132, in which the defendant was found in possession of a loaded firearm and was convicted and sentenced to a term for unlawful possession of a firearm and a concurrent term for unlawful possession of ammunition. (*Id.* at p. 137.) The court in *Lopez* stated that "[t]o allow multiple punishment for possessing ammunition in a firearm would, in our judgment, parse the objectives too finely. While there may be instances when multiple punishment is lawful for possession of a firearm and ammunition, the instant case is not one of them. Where, as here, all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present and section 654 precludes multiple punishment." (*Lopez*, at p. 138.) According to the People, "[t]he reasoning of *Lopez* is applicable in this instance" because "[a]lthough the gun was unloaded when discovered, the ammunition was found in the same . . . case between the wall and the refrigerator in the kitchen and was of the same caliber. In this case, the evidence demonstrates that [defendant] bought the firearm and ammunition at the same time, and the prosecution asserted that [he] possessed the gun and the ammunition for the same purpose, to benefit

10

[his] gang. There is no evidence that [defendant] had separate purposes for possessing the gun and the ammunition."

While *Lopez* is factually distinguishable from this case because the ammunition here was not *in* the firearm, we nonetheless agree with the People, and with defendant, that section 654 barred separate punishment here for possession of the ammunition. First, the trial court made an express finding that defendant's possession of the firearm and his possession of the ammunition were "essentially part of the same transaction and the same time." Given this express finding, we cannot reasonably conclude that, at the same time, the trial court *impliedly* found that defendant harbored an intent and objective for possessing the ammunition that was separate from his intent and objective for possessing the firearm.

Second, even if we could logically imply such a finding, there is no substantial evidence to support it. If the defense is credited, then defendant possessed both the firearm and the accompanying ammunition to protect himself. If the prosecution is credited, then defendant possessed them both to benefit the Sureño gang. Or, giving credit all around, defendant possessed the firearm and the ammunition both to protect himself *and* to benefit his gang. On the evidence here, however, there is simply no objective for either offense that is independent of the objective or objectives for the other offense. For this reason, defendant's possession of the firearm and the accompanying ammunition was an indivisible act for which he could be punished only once. Consequently, the trial court erred in not staying the sentence on the ammunition charge.

DISPOSITION

The judgment is modified to stay the sentence on the charge of being a felon in possession of ammunition pursuant to section 654. As modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment accordingly and

11

forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.


                                                              ROBIE            , Acting P. J.


I concur:


        MURRAY        , J.

BUTZ, J., Concurring and Dissenting.

I agree with my colleagues' well-reasoned opinion except for the conclusion that Penal Code section 654[1] barred separate punishment for defendant's unlawful possession of the ammunition (count two). Thus, I concur in part I of the majority's discussion and dissent as to part II.

Section 654 "bars multiple punishments for separate offenses arising out of a single occurrence where all of the offenses were incident to one objective." (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368.) A trial court's implied finding supported by substantial evidence that defendant entertained a separate intent and objective will be upheld on appeal. (*Ibid.*)

Defendant was charged with, convicted of, and sentenced for both unlawful possession of the firearm and unlawful possession of the ammunition found in a box of ammunition. The trial court made the following succinct statement in imposing sentence on count two: "It is running concurrent because it was *essentially* part of the same transaction and the same time. The defendant was convicted of possession of a firearm and possession of the ammunition. It seems appropriate to run that concurrent." (Italics added.) Neither the prosecution nor defense counsel commented at the sentencing hearing on the trial court's intended concurrent sentence. However, as part of the prosecution's closing statements to the jury on the gang enhancement, the prosecutor argued, "When [defendant] has the gun, it's available for [his two gang-member relatives]. It's available for them to give to other people." "They share guns."

---

[1] Undesignated statutory references are to the Penal Code.

1

The majority characterizes the trial court's statement—that the gun and ammunition possessed by defendant were "essentially part of the same transaction and the same time"—as an "express finding" that precludes an implied finding by the trial court of multiple objectives. (Maj. opn., *ante*, at p. 11.) Further, the majority concludes that even if such a finding could be implied, there was "no substantial evidence" to support it. (*Ibid.*) I disagree on both points.

The trial court's decision to run the sentences concurrently is based on its determination that the possession of the ammunition was related to ("essentially part of") the possession of the firearm; neither was necessary for the other but related to one another because the unloaded gun and box of ammunition with two rounds missing, along with an empty magazine, were found in the same case wedged between the refrigerator and the wall. This explanation of the trial court's use of the phrase "essentially part of" is not inconsistent with an implied finding of defendant's intent and multiple objectives in possessing the ammunition and the firearm.

Here there is sufficient evidence to support an implied finding by the trial court of multiple objectives on the part of defendant. As noted, defendant claimed the gun, ammunition, and magazine belonged to him, that no one else in the house knew about the gun, and that after his friend was killed, defendant bought the gun, ammunition and magazine for $200 from some "random black guy" at a quick stop. Defendant also claimed that he bought the gun for protection. When found, the gun was unloaded and thus not ready for use as protection. Defendant, a gang member, lived with two other gang members, his brother, and his brother-in-law. The gun was not in the bedroom that defendant shared with his brother but in a common area of the house—the kitchen, presumably accessible to the other residents. Defendant's brother-in-law had previously been convicted of possession of a firearm with a gang enhancement. There had been rival gang activity where defendant lived. According to the gang expert, gang members *share guns* and one of the primary criminal activities of defendant's gang was possession

2

of firearms and ammunition.  Based on this evidence, the trial court could reasonably conclude that gang members also *share ammunition*.  The box of ammunition had two rounds missing.  Thus, the ammunition was not necessarily only for the gun found in the case.  In my view, substantial evidence supports the trial court's implied finding that defendant had multiple objectives in possessing the gun and possessing the ammunition, sharing both but not necessarily at the same time.

I agree with the majority that *People v. Lopez* (2004) 119 Cal.App.4th 132, cited by the People, is distinguishable.  Here defendant did not possess ammunition inside of the gun.  Instead, he possessed ammunition outside of the gun, in a box of ammunition with only two rounds missing.  Section 654 does not preclude multiple punishment here. (*People v. Jones* (2012) 54 Cal.4th 350, 358.)  Substantial evidence supports the trial court's implied finding that section 654 did not bar punishment for count two.  I would affirm the judgment of the trial court in its entirety.


          BUTZ         , J.

3