Filed 9/26/22  P. v. Medina CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AUGUSTINE RINCON MEDINA,<br><br>    Defendant and Appellant. | 2d Crim. No. B309771<br>(Super. Ct. No. 2011041363)<br>(Ventura County) |

Augustine Rincon Medina appeals his conviction, by jury, of four counts of premeditated and deliberate attempted murder (Pen. Code, § 664/187, subd. (a))[1], felony evasion (Veh. Code, § 2800.2, subd. (a)), discharging a firearm with gross negligence (§ 246.3, subd. (a)), battery (§ 243, subd. (e)), possession of a firearm by a felon (§ 29800, subd. (a)(1), formerly § 12021, subd. (a)(1)), unlawful firearm activity (§ 29805, subd.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

(c)(1), formerly § 12021, subd. (c)(1)), and unlawful possession of ammunition. (§ 30305, subd. (a), formerly § 12316, subd. (b)(1).) The jury further found that the victim of each attempted murder was a peace officer (§ 190.2, subd. (a)(7)) and that each attempted murder included the intentional discharge of a firearm. (§12022.53, subd. (c).) The trial court sentenced appellant to an indeterminate term in state prison of 140 years to life, plus a determinate term of five years.

Appellant contends: 1. he received ineffective assistance of counsel at trial because defense counsel did not object when the prosecutor's closing argument explained circumstantial evidence and reasonable doubt in a way that diluted the government's burden of proof; 2. the trial court erred when it declined to instruct the jury on assault on a peace officer as a "lesser-encompassed offense" of attempted murder; 3. the trial court erred when it permitted Ventura County Sheriff's Deputy Eric Perdue to offer his opinion that appellant was trying to kill him and Deputy Greg Guilin; 4. the trial court should have excluded Perdue's testimony regarding the impact of the crimes on him and other officers; 5. the trial court erred when it admitted into evidence a 911 call that preceded the attempted murders; 6. cumulative error requires reversal; and 7. the sentence imposed for unlawful possession of ammunition should be stayed pursuant to section 654. We affirm.

FACTS

Appellant had a long term relationship with T. Vasquez, the mother of his three young children although they did not live together. Appellant verbally and physically abused Vasquez. One evening, Vasquez and the three children returned to their Oxnard apartment. A few minutes later, appellant

2

entered the apartment uninvited. He accused Vasquez of having a boyfriend and threatened to kill her. Appellant hit and pushed Vasquez, causing her to fall down. He demanded to see her phone. Vasquez told appellant her phone was still in the car. He demanded the keys and threatened to "fuck [her] up" if she did not give them to him. Vasquez gave appellant the keys. He threatened to kill her if she did not move out of the apartment within five days. When appellant went outside to retrieve Vasquez's phone from the car, she gathered the children and ran with them down the street to another apartment where her older daughter, A. Castro, was visiting with a friend.

Castro called 911 at 8:08 p.m. to report the incident. Vasquez was standing next to Castro while she spoke with the operator. By the time Oxnard police officers arrived at Vasquez's apartment, appellant had already left.

Meanwhile, at about 8:45 p.m., Deputy Perdue was patrolling in Ojai when he saw appellant drive by in an Oldsmobile sedan and cross the center line. Perdue followed appellant while he ran the Oldsmobile's license plate. He learned the car was registered to a probationer named Vincente Flores. Perdue continued to follow the Oldsmobile while requesting assistance from another deputy. Appellant eventually rolled through a stop sign and Perdue activated his lights to initiate a traffic stop. Appellant ignored the lights and kept driving. He eventually turned onto Ojai Avenue, the main street of downtown Ojai, and drove a few blocks before stopping abruptly. Appellant opened the driver's side door and fired five shots toward Perdue. Appellant sped off in the direction of Highway 33. Perdue followed.

3

Appellant led Perdue and another deputy down Highway 33 toward Ventura. He made an abrupt "brake check" near the Stanley Ave. exit which allowed another patrol car driven by Deputy Guilin, to catch up and take the lead in the ongoing chase.

Appellant continued to drive at extremely high speeds down Highway 33 eventually turning on to the 101 freeway heading toward Ventura. He stopped his car in the middle of the freeway near the Seaward exit, got out of the car and fired at the police officers. Perdue testified that he saw appellant grip the gun with both hands and aim at them. Bullets hit Deputy Guilin's vehicle. Appellant got back into his car and continued driving down the freeway.

Appellant exited the freeway at Vineyard Avenue in Oxnard and drove back toward Vasquez's apartment. He stopped briefly in an alley near the apartment, fired more shots at the police officers behind him and then drove away again.

About 15 minutes later, one of appellant's front tires blew out and the chase ground to a halt on Victoria Avenue in Oxnard. Eight to ten police units caught up to appellant. He opened his car door, aimed his firearm at the officers and fired at least two times. Appellant's shots hit one of the police vehicles, but none of the officers were physically injured. Oxnard police officers fired several rounds at appellant, striking him in the head and shoulder. He was taken into custody about one hour after Perdue first attempted to stop him.

The search of appellant's vehicle yielded a .38-caliber Smith & Wesson revolver containing three expended casings in the cylinder. Nine expended casings and one live round were located inside the car.

The defense theory at trial was that appellant was shooting at the police officers because he wanted to get away from them. He did not intend to kill anyone.

DISCUSSION

1. Ineffective Assistance of Counsel. Appellant contends that, during her closing argument, the prosecutor explained the jury instructions on circumstantial evidence and reasonable doubt in a way that diluted the People's burden of proof. He further contends his counsel was ineffective because counsel failed to object to the argument.

In her closing argument, the prosecutor urged the jury to adopt a "reasonable" interpretation of the evidence that supported guilt, rather than an "unreasonable" interpretation that would support "innocence." For example, the prosecutor argued, "In this case, innocence is irrational. It's irrational that the gun pointed itself at the police cars." She further argued the evidence had "proven beyond a reasonable doubt that the defendant is guilty of all charges, that guilt is reasonable and that innocence is unreasonable." The prosecutor's closing argument was accompanied by Power Point slides that repeated the phrase, "Innocence is Irrational" four times.

In discussing the reasonable doubt standard, the prosecutor again argued, "You must consider all of the evidence. You must accept reasonable interpretations. . . . [¶] Beyond a reasonable doubt, which is the People's burden to you, is an abiding conviction [of] the charge. The defendant tried to murder Greg Guilin after he tried to murder Eric Perdue. Innocence in this case is irrational."

Appellant contends the prosecutor misstated the government's burden of proof because she continually insisted the

jury had to accept a "reasonable" interpretation of the evidence, without also noting that the facts had to be proven beyond a reasonable doubt. Although he concedes counsel's failure to object forfeited appellate review of this issue, appellant contends the failure to object rendered his trial counsel ineffective. (*People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*).)

Appellant "bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*Centeno, supra,* 60 Cal.4th at p. 674.) We presume counsel's performance was competent and that counsel's actions or inactions are a matter of sound trial strategy. (*Ibid.*) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) The decision whether to object is "'inherently tactical, and the failure to object will rarely establish ineffective assistance.'" (*People v. Carrasco* (2014) 59 Cal.4th 924, 985, quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 502.)

The record here is silent regarding defense counsel's reason for not objecting. There is, however, a satisfactory explanation for the "failure" to object. Counsel might have believed that his own closing argument, together with the trial court's correct jury instructions, would be sufficient to counter

6

any improper remarks by the prosecutor without drawing more attention to them. Because this would have been a reasonable tactical choice, we cannot conclude defense counsel provided ineffective assistance.

2. Instruction on Assault on a Peace Officer.

Appellant requested that the trial court instruct the jury on assault with a deadly weapon on a peace officer as a lesser included offense of the charged crime, attempted murder. The trial court denied the requested instruction, concluding assault with a deadly weapon was not a lesser included offense of attempted murder. Appellant contends the trial court erred because assault with a deadly weapon is a "lesser-encompassed" offense of attempted murder because the facts alleged in the information include every element of the lesser offense. There was no error.

As an initial matter, any claim of instructional error has been forfeited because appellant did not raise the lesser related offense, or "lesser-encompassed" offense argument in the trial court. (*People v. Weaver* (2012) 53 Cal.4th 1056, 1082; *People v. Fuiava* (2012) 53 Cal.4th 622, 726.) Had the contention not been forfeited, we would reject it.

"[E]ven absent a request, and even over the parties' objections, the trial court must instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 118 (*Birks*).) Sentence enhancement allegations are not considered in determining whether one crime is a lesser necessarily included offense of another. (*People v. Wolcott* (1983) 34 Cal.3d 92, 100-102.) More specifically, "gun use and great bodily injury enhancement allegations accompanying

7

an attempted murder charge do not render assault with a deadly weapon a lesser included offense of the charged attempted murder." (*People v. Alarcon* (2012) 210 Cal.App.4th 432, 436 (*Alarcon*).)

Because assault with a deadly weapon is not a lesser included offense of attempted murder, the trial court had no duty to instruct on assault. (*Alarcon, supra,* 210 Cal.App.4th at p. 439.) Appellant was also not entitled to instruction on the theory that assault with a deadly weapon is a lesser related offense of attempted murder. (*People v. Schmeck* (2005) 37 Cal.4th 240, 291-292, abrogated on another ground, *People v. McKinnon* (2011) 52 Cal.4th 610, 637-643; *Birks, supra,* 19 Cal.4th at p. 136.)

Appellant contends *Birks* does not apply here, however, because the accusatory pleading alleged all of the elements of the lesser offense. But *Birks* rejected this reasoning when it held that a defendant could not require the trial court to instruct on a lesser offense that was not necessarily included in the charged offense but instead bore only "some conceptual and evidentiary 'relationship' thereto." (*Birks, supra,* 19 Cal.4th at p. 112.) We are, of course, required to follow *Birks* and conclude there was no error. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

3. Deputy Perdue's Opinion Testimony. Deputy Perdue testified that he was angry after appellant first fired shots at him, "Because that individual was – more or less just tried to kill me." He further testified that he chased appellant for several public safety reasons, from appellant's many traffic violations "to trying to kill me." Perdue later testified that, when appellant suddenly stopped on the 101 freeway, he determined

8

appellant "was a male who was trying to shoot and kill my partner."

Appellant contends the trial court should have sustained his objections to this testimony because Perdue was speculating about appellant's state of mind when he testified appellant was "trying to kill" him or his partner. There was no prejudicial error.

In *People v. Smith* (2015) 61 Cal.4th 18, 48-49, a witness testified that certain events occurred "'before . . . my brother started torturing'" the victim. Our Supreme Court rejected the argument that this testimony was an improper lay opinion on the question of whether her brother had committed a special circumstance. "It was simply part of her narrative. A witness who uses the word 'torture' in describing a sequence of events is not more testifying 'in the form of an opinion' (Evid. Code, § 800) than a witness describing a 'robbery.'" (*Id.* at p. 49.) Perdue's testimony falls within the same category. He was describing his observation of appellant shooting at him and his fellow officer. (*Ibid.*)

Any error in admitting this testimony was harmless. (Evid. Code § 353; *People v. Watson* (1956) 46 Cal.2d 818.) The evidence was overwhelming that appellant took aim and fired multiple shots at police officers on four separate occasions. It is not reasonably likely the jury would have reached a different conclusion had Perdue testified appellant was "shooting at" him, rather than "trying to kill" him.

4. Testimony Regarding Impact of Shooting. The prosecutor concluded her direct examination of Perdue by asking him how his involvement in this incident was reflected in his "attitude towards testifying today." Perdue responded, "It's life-

9

changing. Life-changing is the best analogy to state it. ¶] [¶] There's too much emotions to pin it down to one, but it's nine years ago. It's still affects me and my coworkers. Some of them are retired now." Appellant contends the trial court erred when it denied his motion in limine to exclude the testimony because it had minimal relevance to Perdue's credibility and was unduly prejudicial. We review the trial court's decision to admit the testimony for abuse of discretion and find none. (*People v. Williams* (2008) 43 Cal.4th 584, 634-635; *People v. Ayala* (2000) 24 Cal.4th 243, 282.)

First, the trial court did not abuse its discretion when it determined the testimony was relevant to Perdue's credibility. Perdue was at times emotional while testifying and his description of the events differed in some respects from other witnesses. Defense counsel challenged his credibility and recollection on cross-examination. Because his credibility was at issue, testimony that might help the jury understand Perdue's demeanor was relevant. The testimony was not unduly prejudicial within the meaning of Evidence Code section 352. It was brief and unlikely to "evoke an emotional bias against [appellant] as an individual . . . ." (*People v. Bolin* (1998) 18 Cal.4th 297, 320.)

Second, any error was harmless because it is not reasonably probable appellant would have obtained a more favorable result had the testimony been excluded. As we have noted, the evidence was overwhelming that appellant led multiple peace officers on a high speed chase and, on four distinct occasions during the chase fired multiple shots at the officers. Jurors could reasonably infer that Perdue and his fellow officers

10

found the incident life-changing and stressful, even without his testimony on the issue.

5. A. Castro's 911 Call. After appellant assaulted T. Vasquez, she fled her apartment with her young children and ran down the street to an apartment where her older daughter, A. Castro was hanging out with a friend. Castro called 911 with Vasquez standing nearby. During the call, Castro told the operator that appellant "has a gun," and "wants to kill" Vasquez. She explained this was not the first time appellant had threatened Vasquez and that, "he's been trying to kill her for the past couple of months." Castro told the operator that appellant broke into Vasquez's house and took her keys and her purse. Vasquez ran away with her children and was not at her apartment. When the operator asked where Vasquez was, Castro said, "[s]he's right here standing next to me." On two occasions, Vasquez herself talks to the 911 operator, describing what appellant was wearing and stating she did not know if appellant is still at her house.

Appellant moved to exclude the recording and transcript of the call on the ground that it was hearsay because Castro had no personal knowledge of the events she was reporting. The trial court denied the motion, concluding instead that the call was admissible under Evidence Code section 1240 as a spontaneous statement. Appellant contends the trial court erred because Castro did not personally observe the events she described in the call and there is no way to know whether she was repeating Vasquez's statements or embellishing them. Appellant contends the statements that appellant wanted to kill Vasquez should also have been excluded because they describe a state of mind rather than a condition or event. Finally, he

11

contends Castro's statement that appellant had been trying to kill Vasquez for months was inadmissible character evidence and unduly prejudicial.  (Evid. Code, §§ 352, 1101, subd. (a).)

Evidence Code section 1240 provides that a statement is not hearsay "if the statement:  (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."  A statement qualifies as spontaneous under this section where:  (1) there has been an occurrence startling enough to produce nervous excitement and render the statement "'spontaneous and unreflecting;'" (2) the statement is made before "'there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance;'" and (3) the statement relates to the occurrence that preceded it. (*People v. Poggi* (1988) 45 Cal.3d 306, 318; see also *People v. Thomas* (2011) 51 Cal.4th 449, 495.)  Such a statement is considered trustworthy because it is made under the stress of excitement, when the declarant lacks an opportunity for reflection or fabrication. (*People v. Clark* (2011) 52 Cal.4th 856, 925; *Thomas, supra,* at p. 496.)

The preliminary facts needed to bring a statement within the exception require proof by a preponderance of the evidence. (*People v. Tewksbury* (1976) 15 Cal.3d 953, 966.)  We will uphold the trial court's determination if it is supported by substantial evidence.  We review its decision to admit the evidence for abuse of discretion. (*People v. Phillips* (2000) 22 Cal.4th 226, 236.)

The trial court did not abuse its discretion when it admitted the 911 call.  The transcript of the call shows that

Vasquez arrived at the apartment where Castro was staying suddenly, while she was still panicked from her violent encounter with appellant. Vasquez stood next to Castro while Castro described the incident to the 911 operator. Castro either directly relayed information from Vasquez to the operator or provided context for the incident that Vasquez did not correct. During the call, both women were obviously stressed by appellant's startling and violent behavior. Castro's statements qualify as spontaneous for purposes of Evidence Code section 1240 because they either described appellant's shocking and violent conduct or provided context for it. (*People v. Farmer* (1989) 47 Cal.3d 888, 903-904, disapproved on another ground, *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6.) There was no abuse of discretion.

Any error in admitting the 911 call was harmless because there is no reasonable probability appellant would have attained a more favorable result had the evidence been excluded. Vasquez made several statements to the police that corroborated Castro's statements during the 911 call. In addition, the officers who responded observed that Vasquez had fresh injuries inflicted during her confrontation with appellant.

6. <u>Cumulative Error</u>. Appellant contends the cumulative effect of these errors requires reversal. "We conclude that any errors or assumed errors were nonprejudicial, whether reviewed separately or cumulatively, and thus reject the contention." (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 308.)

7. <u>Section 654.</u> After appellant was taken into custody, the car he had been driving was searched. Officers recovered a revolver containing three expended casings that

remained in the cylinder. Nine expended casings and one live round were also located inside the car.

The jury convicted appellant on count 8, possession of a firearm by a felon (§ 29800, subd. (a)(1), formerly § 12021, subd. (a)(1)), count 9, unlawful firearm activity (§ 29805, subd. (c)(1), formerly § 12021, subd. (c)(1)), and count 10, unlawful possession of ammunition by a prohibited person. (§ 30305, subd. (a), formerly § 12316, subd. (b)(1).) The trial court found that section 654 barred imposition of a consecutive term on count 9 but declined to apply the statute to count 10. Instead, it imposed a consecutive term of eight months for the possession of ammunition. Appellant contends the trial court erred and that the eight-month term imposed on count 10 should be stayed pursuant to section 654 because possession of the ammunition was part of the same criminal intent and objective as possession of the firearm.

"Section 654 prohibits punishment for two offenses arising from the same act or from a series of acts constituting an indivisible course of conduct." (*People v. Sok* (2010) 181 Cal.App.4th 88, 99.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, overruled on other grounds, *People v. Correa* (2012) 54 Cal.4th 331, 334.)

The trial court has wide latitude in making the factual determination whether section 654 applies in a given case. We will not reverse its findings if there is any substantial

evidence to support them. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

It has long been the rule that, "'[S]imultaneous possession of different items of contraband' are separate acts" for purposes of section 654. (*People v. Jones* (2012) 54 Cal.4th 350, 358 (*Jones*), quoting *In re Hayes* (1969) 70 Cal.2d 604, 612.) We have also held, however, that where "all of the ammunition is loaded into the firearm," possession of both the firearm and the ammunition is an indivisible course of conduct and "section 654 precludes multiple punishment." (*People v. Lopez* (2004) 119 Cal.App.4th 132, 138.)

Unlike the defendants in *Lopez, supra,* and *Sok, supra,* appellant here possessed both a firearm and a bullet that was not loaded into the firearm. Both items were contraband for appellant, a felon. Section 654 does not prohibit multiple punishment for appellant's simultaneous possession of two separate items of contraband under these circumstances. (*Jones, supra,* 54 Cal.4th at p. 358.) Because appellant possessed unloaded ammunition, the jury could reasonably infer that he had two separate intents: first, to fire the ammunition already loaded in the revolver and second, to reload and fire again if needed. These separate intents support separate punishments.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.                    BALTODANO, J.

15

Ryan J. Wright, Judge

Superior Court County of Ventura

_____


David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.