Filed 5/31/24  P. v. Ibanez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE, | D083719 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FSB20003912) |
| ELI CARLOS IBANEZ JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Corey G. Lee, Judge.  Affirmed in part, vacated in part, and remanded with directions.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, and Alan Amann, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In July 2022, a jury convicted Eli Ibanez Jr. of three felony offenses: injuring a spouse or cohabitant (Pen. Code,[1] § 273.5, subd. (a); count 5), possession of a firearm by a felon (§ 29800, subd. (a)(2); count 6), and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 7). At sentencing, the trial court relied on several aggravating factors to impose the upper term of four years on count 5, and the middle term of eight months, consecutive, on counts 6 and 7. Due to a prior strike conviction, the court doubled Ibanez's sentence (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), resulting in a 10 year, eight month prison term.

On appeal, Ibanez argues the trial court abused its discretion by imposing the upper term on count 5, rather than the lower term, due to his youth when he committed the crimes and an adverse childhood. He additionally contends the court erred by imposing separate punishment on counts 6 and 7 because both offenses stemmed from the single act of possessing a loaded firearm. (§ 654, subd. (a).) The Attorney General concedes section 654 required the court to stay the sentence on either count 6 or 7, but argues the court under the circumstances here appropriately imposed the upper term on count 5. As we shall discuss, we perceive no abuse of discretion in the trial court's decision to impose an upper term sentence on count 5. However, section 654 required the court to stay the sentence on count 6 or count 7. Accordingly, the case is remanded to permit the trial court to stay the sentence on either count 6 or 7.

---

[1] All undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Ibanez and his girlfriend, Jane Doe, dated for approximately six months prior to November 2020. The couple lived together and, according to Doe, argued at times about Ibanez's "drinking problem." During these disagreements, Ibanez caused damage to the apartment by hitting the apartment walls.

One night in November 2020, Ibanez and Doe again argued about Ibanez's drinking. Ibanez became angry, biting Doe on her face and hand.[3] Ibanez eventually left the residence, and when he returned he kicked open the door causing damage to the door's lock.

Police responded to the apartment, but Ibanez left the scene before they arrived. Ibanez returned while police were interviewing Doe. Doe identified Ibanez as the person involved in the domestic violence incident. Police arrested him. During Ibanez's arrest, police found a semiautomatic firearm in Ibanez's waistband. The weapon contained 15 rounds of nine-millimeter ammunition.

The Office of the Riverside County District Attorney charged Ibanez with three felony offenses stemming from the November 2020 incident, including corporal injury to a spouse or cohabitant (§ 273.5, subd. (a): count 5), possession of a firearm by a felon[4] (§ 29800, subd. (a)(1); count 6), and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 7). A jury

---

[2] Ibanez's claims on appeal solely relate to the sentence imposed by the trial court; we limit our discussion of the factual and procedural background accordingly.

[3] The bite to Doe's face caused an injury that took approximately four months to heal.

[4] The parties stipulated Ibanez suffered a previous felony conviction.

3

found Ibanez guilty of the charges[5] and, at a bifurcated bench trial, the court found true an allegation that Ibanez suffered a strike prior conviction (§§ 667, subds. (b)-(i), 1170.12).) At Ibanez's sentencing, the court imposed an aggregate sentence of 10 years eight and months, consisting of the upper term on count 5, and consecutive middle terms of eight months on counts 6 and 7.[6]

Ibanez timely appealed.

## DISCUSSION

### I.

*Imposition of the Upper Term on Count 5*

On appeal, Ibanez argues the trial court erred by imposing an upper term sentence on count 5 because the court did not give "due consideration" to the mitigating information presented in his sentencing memorandum and biopsychosocial assessment. According to Ibanez, he was a "likely candidate for a low term" because he was 25 years old at the time of the offense, and as a child he was a witness to and the victim of violence. As we shall discuss, we conclude the court was within its discretion to impose the upper term.

A. *Additional Background*

In a bifurcated bench trial following Ibanez's conviction, the trial court found true seven aggravating sentencing factors within the meaning of

---

[5] The jury acquitted Ibanez of counts 1 through 4, which pertained to an alleged December 2022 incident.

[6] The sentencing triad for section 273.5, subd. (a) (count 5) is two, three, or four years; for section 29800, subd. (a) (count 6) is 16 months, two years, or three years; and for section 30305, subd. (a)(1) (count 7) is 16 months, two years, or three years. (§§ 273.5, subd. (a), 18, subd. (a).)

4

section 1170, subdivision (b)(2), and California Rules of Court, rule 4.421.[7] (See *Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 70–71 [rule 4.421 enumerates the factors courts may consider as aggravating circumstances for the purpose of sentencing under section 1170, subdivision (b)(2)].) Citing to these aggravating factors, the prosecution and the probation officer recommended the court impose a 10 year, eight month prison sentence consisting of the upper term on count 5, and one third the middle terms, imposed consecutively, on counts 6 and 7. The trial court doubled the sentences due to Ibanez's strike prior conviction.

At sentencing, Ibanez moved the court pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 to dismiss his prior strike conviction, urging the court to grant a term of probation, or in the alternative, to impose a low-term prison sentence. In support of his requests, Ibanez cited to his history of trauma, substance abuse issues, mental health issues, and youth when he committed the crime giving rise to his strike and the current offense. Ibanez submitted a biopsychosocial assessment and sentencing memorandum that discussed his childhood and family history.

---

[7] The factors included: (1) the crime involved great violence, great bodily harm, threat of bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) the defendant was armed with or used a weapon at the time of the commission of the crime (*id.*, rule 4.421(a)(2)); (3) the defendant has engaged in violent conduct that indicates a serious danger to society (*id.*, rule 4.421(b)(1)); (4) the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or increasing seriousness (*id.*, rule 4.421(b)(2)); (5) the defendant has served a prior term in prison or county jail (*id.*, rule 4.421(b)(3)); (6) the defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed (*id.*, rule 4.421(b)(4); and (7) the defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory (*id.,* rule 4.421(b)(5)).

Ibanez's biopsychosocial assessment reflected that, as a child, he experienced homelessness and witnessed severe domestic violence between his mother and father. His father also focused violence on Ibanez, and Ibanez was the victim of violence from people living in the neighborhood; Ibanez was stabbed at 13 years old, and hit in the head with a crowbar at 17 years old. During sentencing, Ibanez's attorney asked the court to consider this information, "in the context of mitigation and the new laws on what I think are being called now super mitigants—issues of trauma and abuse and, you know, the defendant's youthfulness."

The trial court denied Ibanez's motion to dismiss his strike prior conviction. In issuing its decision, the court noted that Ibanez's criminal history began when he was 13 years old. Ibanez's criminal convictions then continued into adulthood; he was convicted of several violent offenses, including battery, kidnapping, and robbery. The court found that Ibanez's prior criminal convictions were both "not remote," and "serious and violent in nature and increasingly so in the later years."

The court also considered the mitigating circumstances presented by Ibanez's counsel, commenting:

> "[I]n reviewing the circumstances of [his] life as presented by the defense, it is unfortunate that his life's harshness may have brought him to where he is now; however, the Court also understands that there are choices in life despite the harshness that he has faced, and there are choices for many of those who face similar hardships yet choose not to commit violence against other people, rather choose to protect their loved ones and not commit violence against them."

After the court denied Ibanez's motion to dismiss the strike, it sentenced him. The court said it weighed the mitigating and aggravating circumstances in the case, most of which were already discussed in its

6

decision denying Ibanez's *Romero* motion. The court then sentenced Ibanez, explaining:

> "[A]fter having considered the facts set forth during trial, the probation report, and various aggravating and mitigating circumstances—and I did consider also the fact that [Ibanez] is still quite young and [I] did consider his background and try to balance those factors—the Court does believe that the following sentence is appropriate . . . as to count 5, the Court will sentence [Ibanez to] an aggravated term of four years; count 6 one third the mid term, which is eight months consecutive to count 5; count 7, one third the mid term, which is eight months, also consecutive to counts 5 and 6. This is five year and four months, and this is doubled per the 2016 strike with a total of ten years and eight months in state prison."

B.      *Analysis*

Effective January 1, 2022, the Legislature enacted several bills concerning a trial courts' discretion to impose particular terms within sentencing triads. Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170 to restrict the trial court's discretion to impose an upper-term sentence. (Stats. 2021, ch. 731, § 1.3.) Under amended section 1170, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) In effect, the middle term is "the presumptive sentence for a term of imprisonment unless certain circumstances exist." (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.)

Additionally, Assembly Bill No. 124 (Stats. 2021, ch. 695, § 5.3), amended section 1170 to require the lower term where the defendant "has experienced psychological, physical, or childhood trauma" and that trauma

7

"was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6).) This presumption is also applicable to youths who commit offenses and their youth was a contributing factor in the commission of the crime. (*Ibid.*; § 1016.7, subd. (b) ["A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed."].) Where the presumption applies, the court must impose the lower term unless the court finds aggravating circumstances outweigh the mitigating circumstances, such that the "imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)

Here, Ibanez does not dispute the sufficiency of the evidence supporting the aggravating factors the trial court found true. He contends, however, that because he was 25 years old at the time of the offense, and exposed to violence as a child, he was a "likely candidate" for the low term. He avers that trial court "likely did not realize" he qualified as a youthful offender for the purposes of Assembly Bill No. 124 because he was not sentenced until he was 27 years old.

Contrary to Ibanez's assertions, the record reflects the court knew of Ibanez's youth at the time of the offense and was aware of the scope of its sentencing discretion. The probation report's first page lists Ibanez's date of birth and the offense date; taken together this information establishes Ibanez was 25 years old when he committed the instant offenses. Further, at the sentencing hearing, Ibanez expressly referenced his youth in the context of the mitigating factors the trial court was required to consider in imposing its sentence. Comments from the trial court during the imposition of sentence demonstrated it considered the mitigating circumstances presented by the defense, including Ibanez's youth and other aspects of his background. Accordingly, nothing in the record shows the trial court failed to consider

Ibanez's youth within section 1170, subdivision (b)(6)'s presumption. And, notably, the legislative amendments to section 1170 that Ibanez cites on appeal went into effect over a year prior to his sentencing. In the absence of evidence to the contrary, we presume the trial court knew and correctly applied the law, particularly where, as here, the law had already been in effect for some time. (See *People v. Coleman* (2024) 98 Cal.App.5th 709, *People v. Thomas* (2011) 52 Cal.4th 336, 361.)

Moreover, under section 1170, subdivision (b)(6), the court is only required to impose the lower term where one of the enumerated mitigating circumstances is a "contributing factor" to the offense. Where there is "no explicit indication in the record" that the defendant's youth or childhood trauma contributed to the commission of the offense, the trial court is not required to make an express finding regarding the applicability of this section. (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 994.) Although Ibanez mentioned his youth and childhood trauma in the context of the "new laws" that focus on mitigation, during his sentencing hearing, he did not argue these were contributing factors to the commission of the offenses. The probation report, biopsychosocial assessment, and sentencing memorandum also fail to relate his youth and childhood trauma to the commission of the offenses. Accordingly, the trial court was not required to make a finding regarding the applicability of section 1170, subdivision (b)(6).

Nevertheless, even assuming the record supported a finding that Ibanez's youth and childhood trauma contributed to the commission of the offenses, the trial court was not required to impose the lower term if it found the aggravating circumstances outweighed the mitigating circumstances such that the imposition of the lower term would be "contrary to the interests of justice." (§ 1170, subd. (b)(6).) Nor was the trial court required to impose the

9

middle term under subdivision (b)(2) of section 1170 if it found that the aggravating circumstances justified the imposition of the upper term. (*Ibid*.)

The trial court's comments at Ibanez's sentencing reflect that it extensively weighed the mitigating and aggravating circumstances, including the seven aggravating factors the court found true during the bifurcated bench trial. The court emphasized the severity of the conduct underlying the present convictions, including not just the violence Ibanez inflicted upon Doe, but the fact that he was armed with a loaded firearm. The court also discussed the recency of Ibanez's prior convictions, noting that he was on parole when he committed the instant offenses. The court found that despite rehabilitative efforts since Ibanez's first involvement with the justice system, he continued to commit criminal offenses that were, "serious and violent in nature."

In weighing these aggravating factors, the court found that even considering Ibanez's youth and adverse childhood experiences, the circumstances justified imposing the upper term. The court's findings regarding its weighing of the aggravating and mitigating circumstances support its decision to impose the upper term, rather than the lower or middle term. Although Ibanez emphasizes the significance of the mitigating circumstances he presented to the trial court, under the abuse of discretion standard the reviewing court may not reweigh the evidence the trial court considered. (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258 ["Sentencing courts have wide discretion in weighing aggravating and mitigating factors."]; *People v. Scott* (1994) 9 Cal.4th 331, 355 [reviewing courts may not "reweigh valid factors bearing on the [sentencing] decision below"].) Accordingly, based on the record before us, we conclude the imposition of an upper term sentence was not an abuse of the trial court's discretion because the decision

10

was not, "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)  Rather, the record reflects the court appropriately balanced the aggravating factors against the mitigating factors and determined the imposition of the upper term was justified.

## II.

### *Imposition of Consecutive Sentences on Counts 6 and 7*

At Ibanez's sentencing, the prosecution asked the court to impose consecutive terms on counts 6 and 7, contending that section 654 did not bar multiple punishment under the case's circumstances.  The prosecution argued, "[d]espite the fact that the ammo was inside the firearm, they are separately charged crimes that carry their own criminal penalties for someone who is prohibited from having those two things."  Ibanez disagreed, contending section 654 did not permit the court to impose consecutive terms on counts 6 and 7 because the offenses involved "one gun with ammo inside of it."  The court agreed with the prosecution and found that counts 6 and 7 did not "fit under the definition of [section] 654."  Consequently, the court imposed eight-month consecutive prison terms for these counts.

Section 654 provides, in relevant part, "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)  Whether section 654 applies to preclude multiple punishment involves a "two-step inquiry." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)  The first inquiry is whether the crimes were completed by a single physical act. (*Ibid*.)  If the crimes involved more than a single act, then the analysis proceeds to the second inquiry:  whether the crimes involve an indivisible course of conduct. (*Ibid;*

11

*People v. Kopp* (2019) 38 Cal.App.5th 47, 90.)  When the facts are undisputed, "the application of section 654 raises a question of law we review de novo." (*Corpening, supra,* at p. 312.)

Under section 654, multiple punishments for the offenses of felon in possession of a firearm, and unlawful possession of ammunition, are precluded where all the ammunition is loaded in the firearm.  (*People v. Lopez* (2004) 119 Cal.App.4th 132, 138 ["Where, as here, all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present and section 654 precludes multiple punishment."]; *People v. Sok* (2010) 181 Cal.App.4th 88, [the trial court erred in sentencing the defendant to multiple punishments for unlawful possession of a firearm and unlawful possession of ammunition where the ammunition was either loaded in the firearm or fired from the gun].)  This is so because the offenses constitute an " 'indivisible course of conduct' " where the ammunition is entirely within the firearm.  (*Lopez, supra* at p. 138.)

On appeal, the Attorney General concedes the issue, agreeing with Ibanez that the trial court erred in imposing consecutive terms for counts 6 and 7 because the offenses were accomplished by a single act or course of conduct with the same objective.  We accept the Attorney General's concession and agree that remand is appropriate to permit the trial court to stay punishment on either count 6 or count 7.  Accordingly, the matter shall be remanded so the trial court may exercise its discretion regarding counts 6 and 7.

## DISPOSITION

The sentence on counts 6 and 7 is vacated.  The matter is remanded and the trial court must stay the sentence on either count 6 or count 7.  In all other respects, the judgment is affirmed.  The trial court shall amend the

abstract of judgment as necessary and forward copies of the amended abstract to the Department of Corrections and Rehabilitation.


RUBIN, J.

WE CONCUR:



McCONNELL, P. J.



DATO, J.